400 A.2d 208

**COMMONWEALTH of Pennsylvania**

v.

**Clarence A. STOVER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided March 28, 1979.

Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before PRICE, HESTER and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from an order of the Court of Common Pleas of Allegheny County, Criminal Division, denying post-conviction relief.

The defendant-appellant, Clarence A. Stover, was charged with loitering and prowling at night time and possession of a prohibited offensive weapon and also with a bill charging burglary and theft.

A suppression hearing was held before Judge Popovich who found that the initial arrest for loitering was illegal and suppressed contraband seized incident to that arrest. After the exclusion of such evidence the Commonwealth pursued the charges of burglary and theft.

The appellant was tried non-jury before Judge Popovich and found guilty of both charges. Post-trial motions were denied and he was sentenced to two (2) years to seven (7) years on the burglary charge, with sentence suspended on the theft conviction.

The facts briefly stated resulting in the conviction, are as follows: The appellant was spotted by two police officers on January 8, 1976 at 2:40 A.M., standing outside the rear of a saloon in the North Side of Pittsburgh, urinating.

He was directed to go home. About ten (10) minutes later, the police officers saw appellant walking in a direction opposite to where he had told them his residence was. When he spotted the police car, he ran. He was ap-

prehended and, incident to his arrest for loitering and prowling at nighttime, a large quantity of currency and a weapon were found on his person.

That same day, the police investigated a burglary. A witness to the unlawful entry provided a description which resembled the report filed on appellant. As a result, the witness was taken to the Pittsburgh Public Safety Building to view a line-up.

The witness identified the appellant, on a one-on-one basis, in a jail cell. The trial court excluded this show up and subsequent line-up identification by three eyewitnesses because the one-on-one confrontation was illegal. The evidence of the illegal show up was first uncovered at trial during cross-examination of two of the eyewitnesses by appellant's attorney. The trial court, however, did not suppress the in-court identifications of the eyewitnesses, finding that there was clear and convincing evidence produced by the Commonwealth that such evidence was purged of the taint of the show up and line-up.

The appellant filed an appeal nunc pro tunc on July 14, 1976. The Pennsylvania Superior Court, on July 26, 1976, directed the lower court to conduct an evidentiary hearing. On October 10, 1976 a hearing was held and relief was denied.

Appellant's post-conviction petition was denied on November 17, 1977, after a hearing. This appeal followed.

■ The appellant raises for the first time that the court erred in permitting the in-court identification by eyewitnesses, claiming the tainted one-on-one identifications in a cell carried over to all identifications. This argument has been waived by failure to raise it at trial or on post-trial motions.

The court below clearly held that the jail cell identification procedure was violative of defendant's due process and Sixth Amendment rights. *Commonwealth v. Tate,* 229 Pa. Super. 202, 323 A.2d 188 (1974). The jail cell, show up and line-up identifications were suppressed. However, the court did permit the eyewitness, in-court identifications on the

premise that they were based on evidence independent of the primary illegality.

As the court below said:

"In discerning whether the in-court identifications had a sufficient independent origin, to sanction them, this Court looked to factors promulgated by the United States Supreme Court:

'The factors . . . considered . . . include (d) the opportunity . . . the witness(es) (had) to view the criminal at the time of the crime, the witnesses degree of attention, the accuracy of (their) prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors (was) . . . weighed the corrupting effect of the suggestive identification itself.' *Manson vs. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); citing *Neil vs. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States vs. Wade,* supra, 388 U.S. [218] at 241 [87 S.Ct. 1926, 18 L.Ed.2d 1149]; *Commonwealth vs. Wareham,* 251 Pa.Super. 130, 380 A.2d 412, 413 (1977).

" . . . the witness had an unobstructed view of the defendant during the commission of the crime; their identification testimony was neither speculative, . . . nor weakened on cross-examination, but remained positive.

" . . . these 'indicators' or reliability, i. e., the conversations with and observations of the defendant by the witnesses, their unwaivering (sic) identification testimonies, made in response to questions unassociated with the primary illegality, were '(not) outweighed by the corrupting effect of the challenged (jail and line-up array) . . . the Commonwealth established the independent basis for the in-court identifications by clear and convincing evidence.

" . . . The facts were clear that the three sequestered eyewitnesses, despite their youth and inarticulate

ability to testify, were firm and sure and confident in their independent statements that the defendant asked them to participate in the crime.

"They were clear in their in-court identifications. Without hesitation, they pointed the defendant out, and has ample opportunity to observe the defendant, having engaged in discussion with him on a public street. Couple that with the unwaivering (sic) certainty as to the correctness of their identifications, and one sees why the in-court identifications were held to be products of factors independent of the illegal showup and tainted line-up. . .

"The record discloses that when defendant was asked, by this Court, if he had had adequate time to consult with his appointed counsel, he responded in the negative. As a result, this Court unequivocally stated that '(it) would give (defendant) adequate time (to consult with his attorney) and continue his case (if) (he) wish(ed)' To this, the defendant responded in the negative. When this Court, again, inquired as to defendant's satisfaction with his attorney's services and readiness to proceed, the defendant said 'yes'."

The failure to raise the issue that the eyewitnesses' identifications were tainted creates a waiver. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). However, under the totality of circumstances in this case the in-court identification was sufficiently independent to purge the prior, illegal, out-of-court identification.

"(a)n in-court identification following an illegal out-of-court identification is admissible if considering the totality of the circumstances the in-court identification had an *independent origin* sufficiently distinguishable to be purged of the primary taint." (citations omitted) (emphasis added). *Commonwealth v. Bey*, 249 Pa.Super. 185, 375 A.2d 1304, 1314 (1977); *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63, 69 (1974); *Betrand Appeal*, 451 Pa. 381, 388–89, 303 A.2d 486 (1973); *United States v. Wade*, supra.

**528**

■ Appellant contends that defense counsel was ineffective because he failed to question the eyewitnesses as to identification at the suppression hearing. With this we cannot agree. Defendant asserted his satisfaction with his attorney and it may well have been a tactic of defense to save this line of questioning for trial.

Order affirmed.

PRICE, J., concurs in the result.