431 A.2d 1027

COMMONWEALTH of Pennsylvania, Appellant,

v.

Patrick NAPPI.

COMMONWEALTH of Pennsylvania

v.

Patrick NAPPI, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 6, 1979.

Filed June 19, 1981.

Robert J. Farrell, Assistant District Attorney, Archbald, for Commonwealth, appellant (at No. 707) and for appellee (at No. 1065).

Russell O'Malley, Scranton, for appellant (at No. 1065) and for appellee (at No. 707).

Before SPAETH, CAVANAUGH and O'KICKI *, JJ.

SPAETH, Judge:

This case arises on two appeals, which have been consolidated. On January 30, 1978, Patrick Nappi was indicted for theft by deception [1] (two counts) and theft by failure to make required disposition of funds [2] (one count); the complaining witness was Charles Rader. On January 31, 1978, Nappi was indicted for theft by deception (two counts); the complaining witness was Alexandria Dembinski. The indictments were consolidated for trial, and on June 7, 1978, a jury returned a verdict of guilty on all counts. Post-trial motions were filed. On the Rader counts the lower court denied the motions and imposed sentence. On the Dembinski counts the lower court granted motion in arrest of judgment. In appeal No. 1065 the defendant appeals from the sentence imposed on the Rader counts. In Appeal No. 707 the Commonwealth appeals from the order arresting judgment on the Dembinski counts. In both appeals the only issue is whether the evidence was sufficient to sustain the jury's verdict. We have concluded that it was. Accordingly, in Appeal No. 1065 we shall affirm the sentence, and in Appeal No. 707 we shall reverse and remand with instructions to reinstate the jury's verdict and impose sentence.

* President Judge Joseph F. O'Kicki, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S.A. § 3922.

2. 18 Pa.C.S.A. § 3927.

244

In judging sufficiency, we view the evidence, and all inferences arising from it, in the light most favorable to the verdict winner. *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979); *Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979); *Commonwealth v. Posavek*, 265 Pa.Super. 532, 420 A.3d 532 (1980). So viewed, the evidence was as follows.

The defendant operated a sole proprietorship, known as American Laminating. He placed an advertisement for the sale of the business in a local newspaper. In response to this advertisement, Charles Rader met with the defendant in June or July 1976. Mr. Rader told the defendant that he was interested in investment, rather than purchase, and the defendant showed him the business. At a further meeting, on October 13, the following terms were discussed: Rader was to become a 50% stockholder in the business in return for an investment of $20,000; the defendant was to receive a salary of $300 per week in addition to automobile expenses; and Mr. Rader was to receive $100 per week.

In response to Mr. Rader's request for a financial statement of the business, the defendant gave him a statement, which showed assets of $127,437 and a debt of $20,650.00. This statement was not, however, prepared by the certified public accountant whose name appeared at the top of the statement, but was typed at the defendant's direction by his secretary. Furthermore, the statement was inaccurate, with inflated figures for the value of the business's assets.

On October 22 Mr. Rader made a first payment of $5,000 to the defendant. Both he and the defendant signed a written agreement incorporating the terms concerning the $20,000 investment and the 50% stock ownership. Inclusion of the salary terms was postponed pending a consultation with the defendant's attorney. Both agreed that a new corporation—to be called Classic Impressions, Inc.—was to be formed.

About six weeks later the defendant and Mr. Rader met with the defendant's attorney. The terms described above were discussed. In addition, it was agreed that the defendant would not have the authority to sign checks for more than $500 by himself. However, the defendant had already—on October 28—opened a bank account in the name of Classic Impressions, Inc., with himself as the sole signatory.

On December 15 Mr. Rader made a second payment of $5,000, at the defendant's request. The check was made payable to American Laminating because Mr. Rader was under the impression that the new corporation had not been formed. In fact, however, the defendant had formed the corporation on November 6. No stock in this corporation was ever issued to Mr. Rader.

Mr. Rader made further payments—$5,000 on January 3, 1977, $1,000 on January 19, $2,000 on January 21, and $1,000 on February 4—all at the request of the defendant and all made payable to American Laminating because he was still unaware that the new corporation had been formed. He subsequently paid the defendant another $5,000—bringing the total to $4,000 above the $20,000 agreed upon—when the defendant told him that the money was urgently needed for working capital.

A second meeting with the defendant's attorney was held on March 24, 1977. Just before the meeting the defendant asked Mr. Rader not to mention that he had already given him money for the business. At this meeting Mr. Rader learned for the first time that the business owed approximately $30,000 to the Apex Finance Company. The defendant told him that this was a debt acquired prior to his investment in the business, and thus not in violation of their agreement that the business was not to acquire any additional debts without their joint agreement. However, the loan had in fact been negotiated in November 1976, by means of a corporate resolution allegedly authorizing Classic Impression, Inc., to borrow the money.

In late December 1976 or early January 1977, the defendant had agreed to let Mr. Rader's accountant prepare a current financial statement and break-even analysis of the business. Upon examining the business's records, the accountant discovered serious discrepancies between the cash disbursements journal, the check register, the bank statements, and the cancelled checks. He met with the defendant, who was unable to explain the discrepancies and who became upset at his questions.

On June 16, 1977, Mr. Rader, the defendant and the accountant met to deal with these problems. The defendant admitted that a number of the checks drawn on the Classic Impressions account had been to pay personal expenses. Some of these payments had been disguised in the ledger books as business expenses by the defendant's secretary at his instructions. The defendant had also pocketed about fifty dollars a day from the business's cash receipts throughout this period, without recording these withdrawals.

After this meeting, Mr. Rader made several attempts to see the defendant but was unsuccessful. In August or September of 1977 he went to the business and found it closed. N.T. at 82.

Theft by deception is defined as:

(a) **Offense defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

**(b) Exception.**—The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

18 Pa.C.S.A. § 3922.

Theft by failure to make required disposition of funds received is defined in relevant part as:

**(a) Offense defined.**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927.

The defendant suggests that "the Commonwealth [has] painted a picture of an unfortunate *commercial* relationship, which involved bad judgment, shoddy supervision and management, but no criminal conduct." Defendant's brief on No. 1065 at 22 (emphasis in original). He argues that this case is very similar to *Commonwealth v. Gallo*, 473 Pa. 186, 373 A.2d 1109 (1977). There, the sole proprietor of a small business, representing himself as an account executive for a national publisher, agreed to print up brochures for a building contractor, and collected a payment for advertising in the brochures, but then, when he believed that the contractor had breached the agreement, he kept the money and did not print the brochures. The Supreme Court reversed his conviction for theft by deception on the ground that his failure to perform, by itself, did not establish the requisite intent to deceive. The Court found that his misrepresentations concerning the size of the business and his position within it fell within the exception contained in § 3922(b), that "[t]he term 'deceive' does not, however, include falsity

as to matters having no pecuniary significance . . . ." The contractor had testified that he had been satisfied with the quality of the workmanship in the sample brochures, and it appeared that it was this, rather than the misrepresentations concerning the business, that had persuaded him to pay for the advertising.

Here the evidence amply supports the jury's finding that the defendant was guilty of theft by deception in that he had "intentionally . . . create[d] . . . a false impression . . . as to [the] value" of his business. 18 Pa.C.S.A. § 3922. For example, there was the evidence that the defendant provided Mr. Rader with a deceptive financial statement purporting to be the work of a certified public accountant. In contrast to the misrepresentations in *Commonwealth v. Gallo, supra,* this deception *was* of pecuniary significance, for according to Mr. Rader's testimony, it was because of the statement and other misrepresentations regarding the state of the defendant's business that he decided to invest in the business. Also in contrast to *Gallo,* there was evidence, other than the defendant's failure to fulfill his promises to Mr. Rader, on the basis of which the jury could find that the defendant did not intend to live up to the bargain, as, for example, the evidence of his use of business funds for personal expenses, his disguise of these payments as business expenses in the records, and his unrecorded pocketing of cash receipts.

The defendant argues that the fact that he did form the new corporation is a point in his favor. However, Mr. Rader testified that he was not told of the corporation's formation, and that the defendant told him to make checks payable to the defendant's old business rather than to the new corporation. In addition, the defendant formed the corporation in November 1976—after Mr. Rader's first payment of $5,000 but before he accepted six further payments of $19,000—with himself and his wife as officers and stockholders and without issuing any of the promised stock to Mr. Rader. On the basis of this evidence the jury could find that the defendant took Mr. Rader's payments with no intention of making him a 50 per cent shareholder.

With respect to his conviction of theft by failure to make required disposition of funds, the defendant argues that the evidence was insufficient because, according to him, his use of business funds for personal expenses was counterbalanced by his failure to take all of the salary to which he was entitled and by his use of personal funds for the business. His argument seems to be that this only supports a finding that he was an unwise businessman, rather than that his intent was criminal.

To the contrary, the evidence was that the defendant obtained seven payments totalling $24,000 from Mr. Rader in return for promises to make Mr. Rader a 50 per cent shareholder in a new corporation and to use the money only in the business; that he also agreed not to make any payments over $500 and not to incur any more debts without Mr. Rader's consent; and that he fulfilled none of these promises. In addition, the evidence was that the defendant concealed from Mr. Rader his violation of these promises, by falsifying the records, pocketing cash receipts without recording them, and by concealing the fact that he had formed the new corporation without issuing any shares to Mr. Rader. Again, this evidence amply supports the jury's finding that the defendant obtained property "upon agreement . . . to make specified payments or other disposition" and "intentionally deal[t] with the property obtained as his own and fail[ed] to make the required payment or disposition." 18 Pa.C.S.A. § 3927.

## —Appeal No. 707—

In *Commonwealth v. Froelich*, 458 Pa. 104, 326 A.2d 364 (1974), the Supreme Court stated that in ruling on a motion in arrest of judgment, the evidence is to be viewed by " . . . accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed the jury could properly have based its verdict, it would be nonetheless insufficient in law to find beyond a reasonable doubt that the appellee is guilty of the crime charged."

*Id.,* 458 Pa. at 106, 326 A.2d at 365, *quoting Commonwealth v. Blevins,* 453 Pa. 481, 483, 309 A.2d 421, 422 (1973).

*See also Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Watson,* 270 Pa.Super. 229, 411 A.2d 501 (1979); *Commonwealth v. Kirkman,* 264 Pa.Super. 170, 399 A.2d 720 (1979); *Commonwealth v. Ponder,* 260 Pa.Super. 225, 393 A.2d 1235 (1978); *Commonwealth v. El,* 255 Pa.Super. 597, 389 A.2d 138 (1978). Viewed in this light, the evidence was as follows:

In June 1976 the defendant hired Alexandria Dembinski, an 18-year-old high school graduate, as a part-time secretary. When he discovered that she had received $10,000 in settlement of a personal injury case, he urged her to invest the money in his business. The young woman consulted her father, who advised her not to invest. Nonetheless the defendant continued to urge her to invest. He told her that "things were going great" with the business. He pointed out that he himself owned substantial assets and bragged about his airplane, automobiles, house, and vacation cottage. He did not tell her that all of these assets were owned jointly with his wife, nor that they were heavily encumbered. He promised her a very substantial return on her money—25 per cent annual interest payable quarterly.

Ms. Dembinski was finally persuaded by the defendant's representations. On September 3, 1976, she gave him $5,000. After further similar representations, she gave him another $5,000 two days later. The defendant told her to tell neither his wife nor her father about the money. He himself signed promissory notes prepared by Ms. Dembinski but did not have his wife sign them because—he told the young woman—he did not want his wife to know about the arrangement. In December he made one interest payment of $700. He made no further payments.

The lower court gave the following reasons for granting the defendant's motion in arrest of judgment:

[T]he Commonwealth alleges that the Defendant induced his secretary to lend him $10,000.00 by deception. How-

ever, the evidence produced only indicates that, 1. The Defendant told her "things are going great" with the business when they were not; and 2. That he owned a airplane, motor vehicles, a home and a cottage which he did own, but did not tell her he owned them jointly with his wife and also not tell her of his debts.

The Court finds that this evidence is not enough to support this type of criminal action. The statement that things are going great is mere puffing. The other statements regarding ownership of property were true. The lender knew that the Defendant was married. However, she neglected to check if this property was jointly owned with his wife and also the solvency of the borrower. These facts we find did not make the borrower guilty of a crime, when he could not repay the debt or pay the agreed to interest.

Slip op. at 2.

■ The lower court here substituted its interpretation of the evidence for that of the jury. No doubt the jury might have found that the defendant's description of the state of his business was mere puffing, which could, and did, deceive no one, not even a relatively inexperienced young woman.[3] However, the jury found otherwise, and we have no difficulty in seeing why. The evidence was sufficient for the jury to find that in order to get her $10,000, the defendant intentionally deceived his young secretary by telling her that his business, which was actually in great difficulties, was doing very well, and by deliberately reinforcing the false impression thus created by bragging about his ownership of substantial assets when he knew that those assets were, in fact, substantially encumbered. The jury could also have inferred the defendant's intent to deceive from the evidence that he deliberately told his secretary not to talk to his wife or her father about the deal and from his promising her what was, considering the state of his business, an unrealistically high rate of interest.

**3.** It is not a defense to theft by deception that an ordinary person would not have been deceived by the defendant's misrepresentations. *Commonwealth v. Joy*, 253 Pa.Super. 177, 384 A.2d 1288 (1978).

If the lower court was relying on the exception in Section 3922, that "[t]he term 'deceive' does not ... include ... puffing by statement unlikely to deceive ordinary persons in the group addressed," 18 Pa.C.S.A. § 3922(b), it was mistaken. This is a limited exception, applying "an objective standard of deception to puffing statements that frequently arise in the context of mass advertising." *Commonwealth v. Joy, supra,* 253 Pa.Super. at 183–184, 384 A.2d at 1292. Similarly, the fact that the defendant did have an ownership interest in the assets about which he bragged was not enough to preclude the jury from finding that he deliberately created the false impression that he was a successful and affluent businessman in whose hands Ms. Dembinski's money would be safe.

The judgment of sentence in Appeal No. 1065 is affirmed.

The order of the lower court in Appeal No. 707 granting the motion in arrest of judgment is reversed, and the case is remanded with instructions to reinstate the verdict and impose sentence.