434 A.2d 808

**COMMONWEALTH of Pennsylvania**

v.

**Antoinette HARRISON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Sept. 11, 1981.

Raymond P. Kashimba, Public Defender, Stroudsburg, for appellant.

Linda W. Miller, Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

After a trial by jury, the appellant, Antoinette Harrison, was found guilty of Forgery (18 Pa.C.S.A. § 4101) and Receiving Stolen Property (18 Pa.C.S.A. § 3925). Post-trial motions were timely filed, denied and the appellant was sentenced to serve a period of imprisonment of no less than three (3) months nor more than six (6) months, as well as being ordered to make restitution and to pay the cost of prosecution.

On appeal, appellant asserts (1) the evidence was insufficient as a matter of law to support the forgery conviction, (2) the forgery and receiving stolen property convictions were contrary to the evidence, or, alternatively, to the weight of the evidence, and (3) the lower court erred in refusing to admit various pieces of evidence at trial. Because the evidence amply supports the verdict, and the assignment of error is without merit, the judgment of sentence is affirmed.

In assessing the appellant's first contention, which requests that judgment be arrested, "the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in light most favorable to the

Commonwealth, and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion [to arrest judgment] is to admit all the facts which the Commonwealth's evidence tends to prove." (Emphasis in original) *Commonwealth v. Meadows*, 471 Pa. 201, 205–206, 369 A.2d 1266, 1268 (1977); *accord Commonwealth v. Slout*, 288 Pa. Super. 471, 432 A.2d 609 (1981); *Commonwealth v. Nappi*, 288 Pa.Super. 240, 431 A.2d 1027 (1981). When the evidence is viewed in this manner, it becomes clear that appellant's sufficiency argument must fail.

On November 17, 1978, a young woman carrying a small child entered Metzgar's Market in Tannerville, Monroe County, Pennsylvania. The woman presented Louise Metzgar, an owner of the store, a check for $150.00 for cashing. The check was drawn by Columbia Accident and Health Insurance Company to the order of David S. Marsh, and was dated July 15, 1978. The woman represented that the signature already on the check was that of her husband. However, when she was unable to produce any identification, Mrs. Metzgar requested that she sign the check as a condition precedent to payment. The woman complied and signed her name as that of Susan Marsh. With the added signature, Mrs. Metzgar did not hesitate to honor the check.

On or about July 15, 1978, David S. Marsh did not receive his regular disability check from Columbia. Upon inquiry, he learned that it was mailed and that Columbia had received the cancelled check, which indicated that it had been cashed at Metzgar's Market and endorsed by "David S. Marsh" and "Susan Marsh." At trial, both David Marsh and his wife, known since childhood as "Sue" even though her given name was Veronica, denied endorsing the check.

When appellant took the stand, she testified that she and her two year old daughter spent all of November of 1978 with her father in Youngstown, Ohio. (N.T. 88) Although the appellant denied ever being in Metzgar's Market, or even knowing where it was located, she did admit knowing "Sue" Marsh for "quite a while." (N.T. 100)

Before an individual can be convicted of forgery, the Commonwealth is required to prove beyond a reasonable doubt that he committed one of the following:

"§ 4101. Forgery.

(a) Offense defined.—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(3) utters any writing which he knows to be forged in a manner specified in paragraph (1) or (2) of this subsection." 18 Pa.C.S.A. § 4101.

Here, the appellant was charged with violating subsection (a)(1) of Section 4101. To prove its case, the Commonwealth presented numerous witnesses, e. g., the payee of the check (David S. Marsh), a party whose signature was "altered" on the check (Susan Marsh), an eyewitness to the offense (Mrs. Metzgar) and a handwriting expert (Trooper Walls).

■ As for the sufficiency of the evidence attendant to the question of "identification," our reading of the recorded impresses us that Mrs. Metzgar's testimony was clear, convincing and unhesitant. This is consonant with our Supreme Court's holding that:

"Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that ' "his [positive] testimony as to identity may be treated as the statement of a fact" '. For example, a positive, unqualified identification of defendant by one witness is suffi-

cient for conviction even though half a dozen witnesses testify to an alibi." (Citation omitted) *Commonwealth v. Kloiber*, 378 Pa. 412, 422, 106 A.2d 820, 826 (1954), *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). Instantly, Mrs. Metzgar testified to: 1) conversing with the appellant; 2) selling appellant an item from the counter; 3) observing the appellant carrying a child—maybe two or three years old; and 4) witnessing the appellant "sign[ ] the name Susan Marsh" to the back of the check.[1] (N.T. 32–35, 40–41) Moreover, on cross-examination the witness reaffirmed her belief that she was "*positive* that the person that [she] saw and the person sitting next to [counsel was] one and the same." (Emphasis added) (N.T. 42) In line with the remarks in *Commonwealth v. Kloiber, supra,* we find that Mrs. Metzgar had an unobstructed view of the appellant during the commission of the crime; her identification testimony was neither speculative, *see e. g., Commonwealth v. Wiley*, 288 Pa.Super. 397, 432 A.2d 220 (1981); *Commonwealth v. Pereria*, 219 Pa.Super. 104, 280 A.2d 623 (1971); *Commonwealth v. Paschall*, 214 Pa.Super. 474, 257 A.2d 687 (1969), nor weakened on cross-examination, but remained positive. *See e. g., Commonwealth v. Nelson*, 245 Pa.Super. 33, 369 A.2d 279 (1976); *Commonwealth v. Stover*, 264 Pa.Super. 522, 400 A.2d 208 (1979); *Commonwealth v. Wiggins*, 239 Pa.Super. 256, 361 A.2d 750 (1976). As such, the witness' "positive, unqualified identification . . . [was] sufficient for conviction even though [the appellant] testif[ied] to an alibi." *Commonwealth v. Kloiber, supra.*

■ Further, appellant was linked to the forgery by the Commonwealth's handwriting expert. Samples were obtain-

---

1. Although the Commonwealth did not do so here, given the expert's testimony, it could have utilized Mrs. Metzgar to establish whether the particular writing was done by the appellant. *See* 42 Pa.C.S.A. § 6111(a)(1) (Pamphlet, 1981) ("The opinion of any person acquainted with the handwriting of the supposed writer[ ]" "shall be deemed to be relevant[ ]"). Even though the witness saw the actor write but once, she was still competent to testify on the subject. *See* 1 Henry, Pennsylvania Evidence, § 534 (1953); McCormick, Law of Evidence, § 221 (2d Ed. 1972); 3 Wharton's Criminal Evidence § 527 (13th Ed. 1973).

ed from David S. Marsh, Veronica ("Susan") Marsh and the appellant. From these exemplars, the expert was able to ascertain that the second endorsement on the check—"Susan Marsh"—was executed by the writer of the signature "Antoinette Harrison." (N.T. 63) Despite the inability of the expert to identify conclusively the appellant as the one who executed the first signature, he, "without any doubt whatsoever[,] . . . did find that she was the author of the second endorsement, Susan Marsh." (N.T. 64) Since the weight to be attributed to such testimony was for the trier of fact, 42 Pa.C.S.A. § 6111(c) (Pamphlet, 1981), we will not engage on appeal in a weighing of the evidence in an attempt to second-guess the jury, for such is not our function. *See* *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1956); *Commonwealth v. Nappi, supra.*

▮ It is appellant's position that because the check would not have been cashed without the signature of "David S. Marsh," the "focus" of our attention should be on whether the Commonwealth established beyond a reasonable doubt that she "altered" the name of "David S. Marsh" on the check. (Appellant's Brief at 7) With such averment we cannot agree.

The only questions we deem in issue are whether appellant signed Susan Marsh's name, and, if so, was it done "with the intent to defraud or injure anyone." 18 Pa.C.S.A. § 4101(a)(1). Appellant would have us discount the *effect* of such signature on the basis that it was legally of no consequence since it was written solely for "identification" purposes, and thus did not convert the check into a negotiable instrument. Nonetheless, Mrs. Metzgar would not have cashed the check *but for* the added signature; thus, it induced her to part with money she would not have otherwise relinquished. As a result, based on the facts presented and the reasonable inferences to be derived therefrom, *see* *Commonwealth v. Harrison*, 289 Pa.Super. 126, 432 A.2d 1083 (1981), the trier of fact was justified in concluding that an exchange had occurred in which the appellant had perpetrated a fraud by "altering" the signature of a co-signer on

a negotiable instrument with the intent to defraud and to prejudice another's rights. *See Shay v. Merchants Banking Trust Co.*, 335 Pa. 101, 104, 6 A.2d 536, 538 (1939); *Commonwealth v. Bollinger*, 274 Pa.Super. 112, 117, 418 A.2d 320, 323 (1979); *Commonwealth v. Green*, 205 Pa.Super. 539, 211 A.2d 5 (1965); *Commonwealth v. Wheeler*, 200 Pa.Super. 284, 189 A.2d 291 (1963) (Intent to injure or defraud may be inferred from the doing of wrongful, fraudulent, or illegal acts which in their necessary results naturally produce loss or injury). Therefore, we conclude that the evidence of "altering" that is required under 18 Pa.C.S.A. § 4101(a)(1), i. e., signing another's name, is cogently present. *See Commonwealth v. Hayes*, 245 Pa.Super. 521, 369 A.2d 750 (1976); Black's Law Dictionary, at 71 (5th Ed. 1979).

■ Appellant contends additionally that the verdict is contrary to the weight of the evidence. In support of this contention she points to the Commonwealth's failure to prove that she endorsed the name "David S. Marsh" on the check. We have discussed this matter *supra* and need not repeat our reasons for finding it wanting in merit. Also, appellant urges that the charge of receiving stolen property was not supported by the evidence since Mrs. Metzgar's identification testimony "was fraught with doubt." We find to the contrary (see discussion *supra*) and thus determine that the jury was warranted in concluding that the accused "intentionally receive[d], retain[ed], or dispose[d] of movable property of another knowing that it ha[d] probably been stolen. . . ." 18 Pa.C.S.A. § 3925. Only where the "evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture," may we overturn the verdict on the basis that it is against the weight of the evidence. *Commonwealth v. Farquharson, supra; see also Commonwealth v. Wiley, supra; Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973). This is clearly not such a case. There is nothing in the record to suggest that the Commonwealth's evidence is either too unreliable or contradictory to support the verdict.

Lastly, appellant avers that reversible error occurred when the trial court excluded two anonymous letters from the proceedings, which she contends, if admitted into evidence, would have cast doubt upon her guilt. The text of the two letters reads:

"'Tony—If you know what's good for you, you better not try to sue me. I know you didn't take Dave's check, but I just wanted to get you in trouble. You better not try nothing (sic) stupid because I have somebody watching you—from Guess Who?' (postmarked March 24, 1979, and addressed to [appellant]).

Toni—Did you get my message[?] I hope so[.] I know where you live so don't worry about it[.] Somebody will be watching you—Guess Who[?]' (postmarked March 28, 1979, and addressed to [appellant]).'" (Lower Court Opinion at 4)

The Commonwealth objected to such evidence on the grounds of relevancy and lack of authenticity. (N.T. 93) Appellant's counsel asserted, at side bar, that the purpose of seeking to have the letters introduced was to negate any evidence that appellant took the check, which in turn would have supported the desired inference that she did not have a check in her possession to alter; and to enhance the probability in the minds of the jury that she was not the person who disposed of the check in Metzgar's Market. (N.T. 93–95) The lower court was not persuaded, and, thus, sustained the Commonwealth's objection.

 We note at the outset that all evidence, whether direct or circumstantial, tending to prove identity of a thing or person whose identity is in issue, is relevant. 1 Henry, Pennsylvania Evidence, § 21 (1953); *see generally Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981). On this issue, one commentator has stated:

"It is clear that the relevancy of a writing to a particular issue raised in litigation will frequently be logically dependent upon the existence of some connection between that writing and a particular individual.... The real question, however, is not whether such a connection is

logically necessary for relevancy, but rather what standards are to be applied in determining whether the connection has been made to appear." McCormick, Law of Evidence, § 218, at 543 (2d Ed. 1972).

Ordinarily, a letter does not prove itself, in which case it is not admissible in the absence of proof of its *authenticity and genuineness. See Commonwealth v. Dessus*, 262 Pa.Super. 443, 451, 396 A.2d 1254, 1258 (1978); *Commonwealth v. Gold*, 123 Pa.Super. 128, 186 A. 208 (1936); 3 Wharton's Criminal Evidence § 525 (13th Ed. 1973). The salutary feature of such rule "is that it constitutes a necessary check on the perpetration of fraud." McCormick, Law of Evidence, § 218, at 544; *see generally Commonwealth v. Bufalini*, 223 Pa.Super. 489, 302 A.2d 352 (1973).

■ Inasmuch as the admission of evidence rests in each case on its own facts, *Commonwealth v. Fusci*, 153 Pa.Super. 617, 35 A.2d 93 (1943), we see in the case at bar that appellant's offer of proof failed to indicate that she intended to establish the authorship or identity of the letters as a prerequisite to their submission into evidence. *See Commonwealth v. Dessus, supra*; Anno., 5 A.L.R.3d 1018. We determine, therefore, that the trial judge did not abuse his discretion in excluding such evidence from trial. *See Commonwealth v. Kramer*, 247 Pa.Super. 1, 371 A.2d 1008 (1977); *Commonwealth v. Dessus, supra*. In fact, as noted quite aptly by the trial judge:

"The documents were at best ambiguous in meaning, especially the second of the two offered, and shed no light on [appellant's] guilt or innocence on the offenses charged. Furthermore, the letters' reliability were open to the gravest question. Not a clue was given by [appellant] as to the authorship of same, when, and under what circumstances the letters were written, (other than the date of the alleged offenses), or any other factor [2] which might

2. Parenthetically, if the appellant had shown that the letters were received in due course of mail and they purported to have come in answer to a prior letter, and they showed a knowledge by the writing of the contents of such prior letter, in such case the circumstances would have been sufficient evidence of the genuineness of the replies

have enhanced the probative value of the documents. On this basis, we think the admission of such documents would have been highly improper." (Lower Court Opinion at 5)

We agree and, accordingly, affirm the judgment of sentence.

to have warranted their submission to the jury without proof of the handwriting of the sender. *See* 1 Henry, Pennsylvania Evidence, § 325 (1953) (citing cases).