J. S06037/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
               Appellee :
:
        v. :
:
JULIAN FRISBY, :
:
               Appellant : No. 1148 EDA 2014

Appeal from the Judgment of Sentence March 20, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0008244-2011

BEFORE: BENDER, P.J.E., LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED FEBRUARY 23, 2015**

Appellant, Julian Frisby, appeals from the judgment of sentence

entered in the Court of Common Pleas of Philadelphia County. He challenges

the sufficiency of the evidence regarding his convictions for first degree

murder,[1] criminal conspiracy,[2] firearms not to be carried without a license,[3]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 903(c).

[3] 18 Pa.C.S. § 6106(a)(1).

and possession of an instrument of crime.[4]   Appellant argues eyewitness identification testimony was unreliable.  We affirm.

The trial court summarized the trial evidence, viewed in the light most favorable to the Commonwealth, as follows:

> [O]n April 24, 2011, at about 5:35 p.m., Joel Seay was at his home at 1341 North 55th Street celebrating the Easter holiday with his wife, Cheryl Anne Seay, father-in-law, Allan Graham, friend, Valerie Brewer, and his eighteen year old son, Jarell Seay.  Two men, later identified as [Appellant] and his co-conspirator, Alan Berks, knocked at the door and asked for Jarell.  Joel waited with the two men on the porch and spoke to [Appellant] briefly while Jarell came to the door.  During this time, Joel was standing about five to six feet from [Appellant] and noticed tattoos of flames on [Appellant's] neck.  Jarell spoke with Berks while Joel waited in the doorway.  When Jarell turned to go back into the house, [Appellant] pulled out a gun and shot Jarell twice in the back.  As [Appellant] and Berks fled from the scene, Joel saw one of them drop something.  [N.T. Trial, 3/13/14, at 106-10, 117-18, 120, 133].
>
> The next day, Joel told friends and family that the shooter had tattoos of flames on his neck.  Marissa Jefferson, a neighbor of the Seay family, was asked by friends of Jarell if they could look on her phone and Facebook account for pictures of men with flame tattoos.  The group showed Joel a photograph that depicted [Appellant] shirtless and with long hair.  Joel recognized [Appellant] as the shooter, but indicated that the shooter had had shorter hair.  The group showed Joel a second photograph that depicted [Appellant] with shorter hair.  Joel was certain of his identification after seeing the second picture.  On April 27, 2011, Joel gave a statement to police and identified [Appellant] from a photo array containing a police photograph of [Appellant].  Joel Seay

---

[4] 18 Pa.C.S. § 907(a).

identified [Appellant] three times in court: on July 19, 2011 at the preliminary hearing, on July 30, 2013 at the first trial, and at the trial from which this appeal arises. [*Id.* at 11, 135, 134-44; N.T. Trial, 3/14/14 at 137-41; Commonwealth Exs. 32, 61].

On the night of the murder, Allan Graham, Jarell Seay's grandfather, decided to leave the Easter celebration to go to the gym. When Graham left the house, he walked by Joel, [Appellant], and Berks on the porch as they were speaking. On April 28, 2011, Graham identified [Appellant] from a police photo array as the man he saw on the porch. Graham also identified [Appellant] at trial. [N.T. Trial, 3/14/14 at 64, 68, 75-76].

On April 24, 2011, at about 5:35 p.m., Valerie Brewer, a friend of the Seay family, was at the Seay's house for Easter dinner. Brewer was sitting at the dining room table when she observed [Appellant] and another man come to the front door. She saw Joel answer the door and summon Jarell. She saw Jarell speak to the two men and [Appellant] shoot Jarell. She then saw both men run away. The next day, Brewer identified [Appellant] from a Facebook photo at the Seay house. Brewer identified [Appellant] at both trials. [*Id.* at 25, 28-32, 39, 42, 44].

Ronald Kegler lived across the street from the Seay house on the 1300 block of 55th Street. On the night of the murder, he was walking to his car when he saw [Appellant] and two others heading towards his car which was parked near the Seay house. Kegler got in his car and drove away. On April 27, 2011, Kegler identified [Appellant] in his statement to police. On July 19, 2011, Kegler identified [Appellant] at the preliminary hearing. [*Id.* at 7-10, 16, 22].

Shortly after the shooting, Police Officer Joseph Ford arrived at 1341 North 55th Street. Officer Ford and [sic] transported the unconscious Jarell Seay to the Hospital at the University of Pennsylvania, where he was pronounced dead at 6:01 p.m. According to Dr. Edwin Lieberman, an expert in forensic pathology, Jarell Seay sustained two penetrating gunshot wounds that caused his death; a wound to his back that struck his pancreas, liver, and lungs, and another wound to his right breast, injuring his

lung and aorta. [N.T. Trial, 3/13/14, at 52, 58, 61-62, 66-67, 72; N.T. Trial, 3/14/14, at 98-100].

At approximately 5:36 p.m., Officer Edward Fidler of the Crime Scene Unit arrived at 1341 North 55th Street. Officer Fidler recovered two .380-caliber fired cartridge casings, a cell phone cover, and a blood sample from the porch. It was later determined that DNA taken from the cell phone cover matched Alan Berks. [N.T. Trial, 3/13/14, at 76, 83-84; N.T. Trial, 3/17/14, at 21].

Detective Thorsten Lucke, an expert in forensic video recovery and analysis, recovered surveillance video from 5453 Mater Street. The video showed three individuals come from the 1300 block of Allison Street, [Appellant's] block, walk one block up Master Street, and turn onto 55th Street, the Seay block. Although no identification could be made from the video, it confirms that three individuals were in the vicinity of the Seay house. It shows some vague movements and then two individuals running back towards the 1300 block of Allison Street. [N.T. Trial, 3/13/14, at 171, 182, 195; N.T. Trial, 3/17/14, at 39, 41, 43, 46].

On April 29, 2011, Detective Tacey Byard executed a search warrant on [Appellant's] home at 1333 North Allison Street. Detective Byard recovered one box of bullets marked Remington, containing one .32-caliber live round and three .380-caliber live rounds. Detective Byard also recovered a letter, post marked June 23, 2010, sent from Berks to [Appellant] while Berks was incarcerated. [N.T. Trial, 3/17/14 at 21-23].

According to Police Officer Ronald Weitman, an expert in firearms identification and ballistics, the projectile recovered by the medical examiner's office was a .380-caliber automatic. The two .380-caliber fired cartridge casings recovered from the scene were fired from the same unrecovered .380-caliber automatic firearm. [N.T. Trial, 3/14/14, at 161-63, 166, 168, 170-71].

William Cooney of the Juvenile Probation Department testified that both [Appellant] and Berks had tattoos that indicated they were affiliated with the 56th and Master Street gang. Officer Cooney also explained that the letter

- 4 -

from Berks postmarked June 23, 2010 that was recovered from [Appellant's] house had 56th and Master written on the envelope in large print. On the letter inside, Berks addressed [Appellant] as "J-Roc" in large print surrounded by a drawing of flames. Berks had written "MS" inside the letter "O" of "J-Roc." [N.T. Trial, 3/17/14, at 9, 14-15].

On April 28, 2011, an arrest warrant was prepared for [Appellant]. For several days after the arrest warrant was issued, Detective Sean Mellon of the Fugitive Squad searched for [Appellant] at 1333 North Allison Street and 174 Rosemar Street in Philadelphia. On May 5, 2011, [Appellant] was arrested while hiding in the basement of 1208 Powell Street. [N.T. Trial, 3/14/14, at 128-35].

[Appellant] presented testimony from two alibi witnesses, which was rejected by the jury. Ava Browning, a friend of the Frisby family, testified that on the day of the murder she was walking home near 55th and Thompson Streets, about two blocks from the Seay home, when she heard gunshots. As she heard the gunshots, Browning saw [Appellant] sitting with a group of people on the steps of a home on Thompson Street. [N.T. Trial, 3/17/14, at 55-58].

Sebastian Frisby, [Appellant's] brother, also testified on behalf of the defense. Frisby testified that around 5:30 p.m. on the day of the murder, he was with [Appellant] on Thompson Street watching a fight. While watching the fight, he heard two gunshots. As Sebastian Frisby walked to his home on Al[l]ison Street, about two blocks from the Seay house, he saw Berks coming down the street from Master Street. At that time, Berks had flame tattoos on his neck. When Sebastian Frisby saw Berks about a week after the murder, Berks had added tattoos of bricks over his flame tattoos. [*Id.* at 81-82, 88-92].

Alexis Marie Frisby, [Appellant's] mother, and Officer Dionne Madison offered testimony as to the defendant's good character. [*Id.* at 132-35].

Trial Ct. Op., 6/11/14, at 2-6.

On July 29, 2013, Appellant appeared before the court and elected to be tried by jury. On August 5, 2013, a mistrial was declared after the jury failed to reach a unanimous decision.

A second jury trial started on March 11, 2014. On March 20, 2014, the jury found Appellant guilty of the following: first degree murder, criminal conspiracy, firearms not to be carried without a license, and possession of an instrument of crime. The next day, the court sentenced Appellant to life imprisonment without the possibility of parole for murder, twenty years' imprisonment for conspiracy, one to two years' imprisonment for firearms not to be carried without a license, and no further penalty for possession of an instrument of crime. The court ordered the sentences to run concurrently. Charges for carrying firearms on public streets or public property in Philadelphia[5] and recklessly endangering another person[6] were *nolle prossed*.

Appellant filed a timely notice of appeal on April 14, 2014. After obtaining two extensions of time, he filed a timely court-ordered Pa.R.A.P. 1925(b) statement of matters complained of on appeal on May 30, 2014. On June 11, 2014, the trial court issued its opinion.

Appellant raises the following issue:

---

[5] 18 Pa.C.S. § 6108.

[6] 18 Pa.C.S. § 2705.

> Whether the evidence was insufficient as a matter of law to sustain Appellant's conviction[s] for murder in the first degree, carrying a firearm without a license, and possession of the instrument of crime where there was no physical evidence connecting Appellant to the crime and eyewitness testimony was so inconsistent to render it unworthy of belief[.]

Appellant's Brief at 6.

Appellant challenges the sufficiency of identification evidence for these convictions. *Id.* at 25. He does not challenge sufficiency as to any particular element, but rather argues the eyewitness identifications were insufficient to sustain his convictions because they were tainted, lacked an independent basis, and were unsupported by physical evidence. *Id.* at 28-33. Appellant claims the identifications were tainted because three of the four witnesses viewed Appellant's photograph prior to formally identifying Appellant to the police. *Id.* at 29. Appellant also claims the identifications were tainted because the witnesses spoke with each other about their identifications, statements, and what they saw. *Id.* at 30. Appellant further contends no independent basis for the testimony exists because at least two witnesses had not seen Appellant or his co-conspirator before the shooting, the witnesses saw the shooter's face for a short amount of time, one witness had a questionable vantage point, and the witnesses' testimony that they identified Appellant because they recognized his face lacked merit as circular logic. *Id.* at 31-32. Finally, Appellant argues that no physical evidence ties Appellant to the scene other than the fact that the shooter used the same

caliber of bullets recovered from Appellant's apartment.  *Id.* at 33.  We disagree.

The standard of review for a sufficiency of the evidence challenge is well-established:

> In reviewing the sufficiency of the evidence, we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's findings of all the elements of the offense beyond a reasonable doubt.  The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (citations omitted).

Identification evidence used to sustain a conviction "need not be positive and certain."  *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations omitted).  Indeed:

> Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator.  Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh.  Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Id.* (citations and punctuation omitted).

Pennsylvania courts have "consistently held" eyewitness testimony to be sufficient evidence to sustain a first degree murder conviction.

***Commonwealth v. Brooker***, 103 A.3d 325, 331 (Pa. Super. 2014) (holding that sufficient evidence sustained murder conviction where eyewitness testified defendant shot victim in head and chest while witness watched from few feet away) (citing ***Commonwealth v. Mattison***, 82 A.3d 386, 392 (Pa. 2013)). In ***Mattison***, the defendant and his wife drove a woman and the woman's friend to the apartment building of the woman's boyfriend. ***Mattison***, 82 A.3d at 390. The woman entered the apartment and confronted her boyfriend, who was with the woman's childhood friend. ***Id.*** The defendant then entered the apartment with his gun drawn, and the woman returned to the car. ***Id.*** The defendant robbed and then fatally shot the boyfriend. ***Id.*** The woman and the friend she arrived with heard the gunshot from outside the apartment. ***Id.*** The defendant returned to the vehicle with what he stole and explained that the woman's childhood friend fired a weapon at him. ***Id.***

Police ultimately apprehended the defendant. ***Id.*** The woman's childhood friend identified the defendant as the shooter in a photo array days after the incident, and again in a physical lineup. ***Id.*** Police charged the defendant with, *inter alia*, first degree murder. ***Id.***

At trial, the woman's childhood friend testified that she saw the defendant kill the victim, the woman testified about the surrounding events, and the defendant's wife corroborated the woman's testimony. ***Id.*** at 391.

A jury convicted the defendant of first degree murder and sentenced him to death. *Id.*

The defendant appealed, arguing, *inter alia*, the evidence was insufficient to demonstrate he was the shooter. *Id.* at 393. The defendant contended the evidence indicated a crime of passion between fighting lovers followed by a subsequent cover-up by the woman and the victim's friend. *Id.* The defendant further argued that the woman had the stronger motive and that her failure to immediately call the police was indicative of her guilt. *Id.*

On direct appeal, our Supreme Court affirmed, concluding "without hesitation" that the testimony of the woman's childhood friend established the elements necessary to sustain the murder conviction where the witness testified that the defendant demanded and obtained drugs before fatally shooting the victim in the head. *Id.* at 392. In so doing, it rejected the defendant's contentions that the physical evidence suggested a crime of passion and that the woman and her childhood friend had a stronger motive since these arguments "fail[ed] to view the evidence in the light most favorable to the Commonwealth as verdict winner." *Id.* at 392-93.

In the instant case, Joel Seay's testimony established Appellant's identity to sustain the first degree murder conviction when he testified that he observed and spoke to Appellant at a distance of about five to six feet before watching Appellant fatally shoot the victim. Trial Ct. Op. at 3 (citing

N.T. Trial, 3/13/14, at 11, 135, 134-44; N.T. Trial, 3/14/14, at 137-41; Commonwealth Exs. 32, 61). Joel Seay testified that Appellant and his co-conspirator knocked on his door and asked to see the victim. *Id.* He testified that while waiting on his porch for the victim, he observed Appellant and his co-conspirator and spoke briefly with Appellant. *Id.* He further stated that he waited in the doorway while the men talked to the victim, and that he saw Appellant shoot the victim twice. *Id.* at 2-3. Joel Seay identified Appellant from a photo array and three times in court. Based on this testimony, the jury could have found Appellant guilty of first degree murder beyond a reasonable doubt. *See Mattison*, 82 A.3d at 393.

Witness testimony and other evidence further support Appellant's criminal convictions, and therefore "any indefiniteness and uncertainty in the identification testimony goes to its weight." *See Orr*, 38 A.3d at 874. Valerie Brewer testified that she witnessed Appellant fatally shoot the victim, and identified Appellant at both trials. Trial Ct. Op. at 3-4 (citing N.T. Trial, 3/14/[14], at 25, 28-32, 39, 42, 44). Allan Graham testified that Appellant was on the porch before the shooting and identified Appellant in a police photo array and at trial. Trial Ct. Op. at 3 (citing N.T. Trial, 3/14/14, at 64, 68, 75-76).

The Commonwealth also introduced the posthumous testimony of Ronald Kegler, who identified Appellant as one of three men approaching the victim's home near the time of the shooting. He identified Appellant in a

statement to police and at the preliminary hearing. *Id.* at 4 (citing N.T. Trial, 3/14/14, at 7-10, 16, 22). Appellant's ties to Alan Berks also support this conviction. Berks' DNA was on a cell phone cover found near the scene. *Id.* at 4 (citing N.T. Trial, 3/13/14, at 76, 83-84; N.T. Trial, 3/17/14, at 21). Berks and Appellant have tattoos consistent with the same gang, and police recovered a letter from Berks to Appellant that contained writing and markings consistent with a shared gang affiliation. *Id.* at 5 (citing N.T. Trial, 3/17/14, at 9, 14-15). Video surveillance recovered from a nearby store and bullets recovered from Appellant's home further corroborate this identification evidence. *Id.* at 5 (citing N.T. Trial, 3/13/14, at 171, 182, 195; N.T. Trial, 3/14/14, at 161-63, 166, 168, 170-71; N.T. Trial, 3/17/14, at 21-23, 39, 41, 43, 46).

Appellant's attempt to pose the reliability of identification evidence as a question of sufficiency rather than weight fails because multiple witnesses identified Appellant shortly after the murder and in court based on recognizing his face. *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006) (holding that any uncertainty in identification testimony is question of weight rather than sufficiency where two witnesses identified defendant as assailant in separate photographic arrays and preliminary hearing even though they expressed doubt at trial). Therefore, identification depends on the jury's credibility determinations regarding the identification testimony rather than on admitted misidentifications or mistakes in

identification. ***Orr***, 38 A.3d at 874 n.5. In ***Orr***, the victim identified the defendant immediately following a robbery based only on the defendant's clothing and red beard, but failed to identify him in a lineup or in court. ***Id.*** at 874-75. Police arrested the defendant shortly after the robbery in a location consistent with the victim's description, and recovered from the defendant exactly twenty-six dollars—the identical sum of money allegedly stolen. ***Id.*** at 870-71. The trial court found the defendant guilty, and he appealed. ***Id.*** The *en banc* Court found that the circumstantial evidence linking the defendant to the crimes sufficed to sustain the convictions. ***Id.*** at 875. In so doing, the ***Orr*** Court declined to extend case law resolving identification reliability as a question of sufficiency rather than weight. ***See id.*** at 875 (distinguishing from ***Commonwealth v. Crews***, 260 A.2d 771, 772 (Pa. 1970) (holding evidence was insufficient to sustain first degree murder conviction where identification was based solely on defendant's height, skin color, and gold sweater), and ***Commonwealth v. Grahame***, 482 A.2d 256, 259 (Pa. Super. 1984) (holding evidence was insufficient where based exclusively on victim's identification of defendant and where victim testified she did not get good look at or know defendant, was unable to identify defendant in lineup, and testified, "[a]ll blacks look alike")).

As noted *supra*, multiple witnesses in the case *sub judice* unequivocally identified Appellant before and during his trial, and other circumstantial evidence corroborates this testimony. Therefore the facts of

*Crews* and *Grahame* are readily distinguishable. Whereas in *Crews*, the defendant's murder conviction relied solely on his likeness to the "very general description" of the assailant's height and skin color as well as his possession of a sweater similar in color to the one worn by the assailant, Appellant's conviction is supported by multiple witnesses testifying they recognize Appellant based on, *inter alia*, his face as well as by other circumstantial evidence. *See Crews*, 260 A.2d at 772. In *Grahame*, the eyewitness could not identify the defendant and acknowledged she could not identify the defendant, whereas here, multiple witnesses positively identified Appellant on multiple occasions. *See Grahame*, 482 A.2d at 259; *see also Commonwealth v. Valentine*, 101 A.3d 801, 806 (Pa. Super. 2014) (holding sufficient evidence sustained robbery conviction where victim's "positive and unequivocal identification" of defendant based on clothing, build, and ethnicity occurred shortly after crime, victim identified defendant in preliminary hearing and trial, and victim's purse was found in dumpster short distance from defendant's residence); *Commonwealth v. Harrison*, 434 A.2d 808, 810 (Pa. Super. 1981) ("[A] positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi").

Appellant's arguments that the testimony was not believable and that the outcome was unsupported by physical evidence lack merit because these contentions go to the weight of the evidence and "fail[ ] to view the evidence

in the light most favorable to the Commonwealth as verdict winner." ***See Mattison***, 82 A.3d at 393.

To the extent Appellant attempts to argue that the identification testimony was inadmissible under the guise of his sufficiency argument, we find Appellant failed to object or file a motion to suppress the evidence. ***See*** Trial Ct. Op. at 8. Appellant therefore waived the issue. ***See*** Pa.R.A.P. 302(a).

Finally, Appellant's argument that the Commonwealth failed to prove motive is likewise not properly before the Court. ***See Mattison***, 82 A.3d at 393 (holding that defendant's alternate theories about physical evidence and motive had "no place in making the legal determination of whether the evidence of record is sufficient to sustain [a] murder conviction").

Based on the foregoing, Appellant's argument that the identification evidence is not sufficient to sustain his convictions is meritless. Rather, the evidence viewed in the light most favorable to the Commonwealth supports the jury's determination that Appellant is the one who committed these crimes. ***See id.*** at 392.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2015