442 A.2d 1153

**COMMONWEALTH of Pennsylvania**

v.

**Robert GRAEFF, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1981.

Filed March 12, 1982.

Petition for Allowance of Appeal Denied Sept. 10, 1982.

---

**10.** Michael Bellacchio was only 16 years of age at the time the crimes were committed; appellant was 30.

George E. Goldstein, Pottstown, for appellant.

Michael H. Ranck, District Attorney, Lancaster, for Commonwealth, appellee.

Before WICKERSHAM, POPOVICH and WATKINS, JJ.

POPOVICH, Judge:

On June 19, 1979, appellant, Robert J. Graeff, was found guilty by a jury of Delivery of a Controlled Substance (methamphetamine).[1]  Post-trial motions were timely filed

1.  35 P.S. § 780–113(a)(30).  The prosecution entered a *nolle prosequi* for Possession With Intent to Deliver a Controlled Substance.  *Id.*

and denied. Thereafter, appellant was sentenced to a term of imprisonment of eleven and one-half (11½) to twenty-three (23) months in the Lancaster County Prison. On appeal, appellant complains that the evidence was not sufficient to sustain his conviction. More particularly, appellant protests that the Commonwealth, by its failure to establish that "the quantity of th[e controlled] substance involved had a potential for abuse associated with a stimulant effect upon the [central] nervous system[,]" fell short of proving all the essential elements of the offense charged. We disagree and, accordingly, affirm the judgment of sentence.

Before reaching the merits of appellant's claim, we need to discuss the trial court's and the Commonwealth's contention that the issue raised cannot be addressed "because it was waived and not preserved at trial[,]" since the appellant omitted to enter a demurrer at the close of the Commonwealth's case-in-chief. Such proposition is predicated upon *Commonwealth v. Keysock*, 236 Pa.Super. 474; 345 A.2d 767 (1975), wherein it was noted that a litigant must make a timely, specific objection at trial and raise the issue on post-trial motion in order to preserve it. We observe that such requirement is codified in Pa.R.Crim.P. 1123(a), which provides that, in reviewing written motions for a new trial and in arrest of judgment, a trial judge may consider "[o]nly those grounds . . . which were raised in pre-trial proceedings or at trial," unless he, upon cause shown, allows otherwise.

■ Initially, it must be conceded that Rule 1123, despite its directive, "does not suspend" the Act of June 15, 1951, P.L. 585, § 1, 19 P.S. § 871,[2] (see *Comment* to Rule 1123), which reads:

"Hereinafter, in all criminal prosecutions in this Commonwealth in which the jury shall have rendered a verdict against the defendant, the defendant may, in addition to making a motion in arrest of judgment on the grounds that there is error appearing on the face of the record,

2. The Act was repealed by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, 42 P.S. § 20002(a)[1275] (eff. June 27, 1980).

may make a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge, and if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case."

Prior to the promulgation of the aforecited Act, the rule was that a motion in arrest of judgment would be granted only for causes appearing upon the face of the record, which consisted of the indictment, the plea and issue and verdict, and the insufficiency of the evidence gave no support to such a motion. *Commonwealth v. Haimbach,* 151 Pa.Super. 581, 30 A.2d 653 (1943); accord *Commonwealth v. Coyle,* 190 Pa.Super. 509, 154 A.2d 412 (1959); *Commonwealth v. Samuel,* 168 Pa.Super. 592, 80 A.2d 863 (1951). Therefore, when the legislature for the first time passed an act relating to a motion in arrest of judgment (19 P.S. § 871) it clearly took cognizance of the fact there was then in existence the motion in arrest of judgment *and simply added the insufficiency of evidence as an additional ground. Commonwealth v. Herstine,* 264 Pa.Super. 414, 399 A.2d 1118 (1979). Thus, were we to hold, as the trial court and the Commonwealth would have us do, that the appellant's failure to demurrer to the evidence (see *Commonwealth v. Wimberly,* 488 Pa. 169, 411 A.2d 1193 (1979)) precludes him from attacking the sufficiency of the evidence, Section 871 would be rendered a nullity. This we cannot do. The General Assembly intends that a statute be effective and certain, and does not intend a result that is absurd or unreasonable. 1 Pa.C.S.A. § 1922(1) & (2) (Supp.1964–80); *Commonwealth v. Herstine,* supra.

Consequently, we find that, under the statutory provision of Section 871, appellant preserved an assault on his conviction on the ground of insufficiency of the evidence.[3] By so

3. Appellant set forth in his motion for a new trial and in arrest of judgment that "[t]he verdict was contrary to the weight of the evidence and was not in accordance with the law." On this point, we observe that:

" 'Although the assertion that the verdict is against the weight of the evidence is not a proper consideration in passing on a motion

doing, " 'it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged.' " [4] (Citations omitted) *Commonwealth v. Meadows*, 471 Pa. 201, 204, 369 A.2d 1266, 1268 (1977).

Consistent with the dictates of *Meadows*, we will review the sufficiency claim, and, additionally, respond to appellant's protestation that the Commonwealth was remiss in not proving that: 1) the quantity of methamphetamine sold by him had a potential for abuse; and 2) he was not registered under the Drug Act. 35 P.S. § 780–101 *et seq.*

After reviewing the entire trial record, we find the following: On April 28, 1978, at approximately 7:15 p.m., Robert M. Roderick, a state narcotic agent, and Daniel Krushinsky, a paid informant whose function it was "to set up buys" with people targeted by the Pennsylvania Bureau of Drug Control, met the appellant in the parking lot of the Lancaster Shopping Center, Manheim Township, Lancaster, Pennsylvania. The trio entered the appellant's Jeep and rode around the area. In the course thereof, appellant handed a

in arrest of judgment, a criminal defendant may be given a new trial on that ground, and this is true, even where the evidence is legally sufficient to sustain a guilty verdict.' " *Commonwealth v. Ponder*, 260 Pa.Super. 225, 226, 393 A.2d 1235, 1236 (1978); see also *Commonwealth v. Davis*, 477 Pa. 197, 203, 383 A.2d 891, 894 (1978) (that "the verdict is contrary to the weight of the evidence" is a proper ground for relief in a motion for a new trial).

4. We note that even if the appellant had entered a demurrer to the evidence, when you couple the presentation of a defense with the likelihood of a denial of said motion, the validity of the ruling thereon would have been waived. See *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. * (1976). In such instance, we treat an accused's challenge on this issue as one directed to the sufficiency of the evidence, see *Commonwealth v. Dussinger*, 478 Pa. 182, 187, 386 A.2d 500, 502 (1978), which we are doing in the case at bar, since "[a] demurrer and a claim of insufficiency of the evidence differ only with respect to the stage of the proceedings at which they are raised." *Commonwealth v. Duncan*, 473 Pa. 62, 66 n. 2, 373 A.2d 1051, 1052–53 n. 2 (1977). Accord *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 436 n. 5, 422 A.2d 1369, 1371 n. 5 (1980).

clear plastic bag to Krushinsky, who in turn gave it to Agent Roderick. The Agent opened the bag, smelled the substance and then placed it in his mouth—it was later tested and found to be methamphetamine. The Agent and Krushinsky proceeded to combine their monies and paid the appellant $3,600 for the two ounce bag. By this time, appellant had made his way back to the shopping center and dropped off the Agent and Krushinsky. Before leaving the lot for a rendezvous with the surveillance team (made up of Agents Gibson, Campbell and Detectives Walters and Geesey of the Lancaster City Police) for debriefing purposes, Agent Roderick managed to secure the license number of the appellant's Jeep. Sometime thereafter, the appellant was arrested.

As for the question of identification, all of the Commonwealth's witnesses unequivocally selected the appellant as the individual involved in the drug sale on the evening of April 28, 1978. This point was buttressed by the fact, which was undisputed by the accused, that Mr. Krushinsky, Agent Gibson and Det. Geesey had known the appellant prior to the incident in question—Krushinsky had worked for the appellant; Agent Gibson knew the appellant for some 10 to 20 years; and Det. Geesey knew the appellant "for several years." Also, the Jeep's license number checked out to be registered to the appellant.

Appellant's defense to the charge was one of alibi. He testified that he was in Atlantic City, New Jersey, with his wife, a Doctor and Mrs. Ducker, and a friend, Miss Easter, on the day and time in question. All of the individuals mentioned testified and corroborated the appellant's version of the group making their way to New Jersey for an evening of enjoyment.

As we have stated in the past, "[g]iven the divergency in the testimony of the witnesses, and since it is within the prerogative of the fact finder to believe all, part or none of the testimony of any witness, 'we will not engage on appeal in a weighing of the evidence in an attempt to second-guess the jury, for such is not our function.'" (Citations omitted)

*Commonwealth v. Tumminello,* 292 Pa.Super. 381, 387, 437 A.2d 435, 438 (1981). Moreover, the witnesses' opportunity for identification was good and was not weakened by a prior failure to identify, and, even after cross-examination, remained positive and unqualified. For example, Agent Roderick and Mr. Krushinsky engaged in a face-to-face conversation with the appellant, and were in his company for approximately 15 minutes before effectuating the drug transaction. Additionally, Agents Gibson and Campbell, who were two members of the four man surveillance team, followed the Jeep during its drive around the area, and, when they passed the Jeep, the two Agents "saw it was Graeff" operating the vehicle. (N.T. 123, 133–34) Det. Geesey also testified that the individual he observed in the company of Roderick and Krushinsky was the appellant. He was sure of his identification, for he had known the appellant for "[s]everal years before[ ]" and had gone to "the same insitution [sic] of higher learning that Mr. Graeff" had attended. (N.T. 144) In such situations, the cases say that a witness' " ' "[positive] testimony as to identity may be treated as the statement of a fact" ' ". For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi." (Citations omitted) *Commonwealth v. Kloiber,* 378 Pa. 412, 422, 106 A.2d 820, 826 (1954), *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). Thus, because the identification testimony was neither speculative nor weakened on cross-examination, we find that the witnesses' positive, unqualified identification was sufficient for conviction even though the appellant, and the witnesses presented on his behalf, testified to an alibi. *Id.; Commonwealth v. Harrison,* 290 Pa.Super. 389, 434 A.2d 808 (1981). To do otherwise, in light of the facts presented, would be to invade the bailiwick of the trier of fact in the absence of "evidence . . . so unreliable and/or contradictory as to make any verdict based thereon pure conjecture . . . ." (Citations omitted) *Commonwealth v. Farquharson,* 467 Pa. 50, 59, 354 A.2d 545, 550 (1956); *Commonwealth v. Harrison,* supra; *Commonwealth v. Gomori,* 192 Pa.Super. 325, 329, 161 A.2d

649, 651 (1960) (Facts and circumstances to warrant conviction need not rise to the level of "beyond moral certainty nor as being absolutely incompatible with . . . innocence, but at least beyond a reasonable doubt." [Citation omitted] ); see also *Commonwealth v. Adams*, 234 Pa.Super. 387, 394, 338 A.2d 642, 645 (1975). This Court finds no reason to alter the jury's verdict.

■ We now turn our attention to the appellant's argument, which is part and parcel of the sufficiency issue, that the Commonwealth failed to prove an essential element of the offense of Delivery of a Controlled Substance, i.e., that the quantity of methamphetamine sold to the undercover agents had a potential for abuse. The appellant avers that such assertion is in accordance with *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979) and our own decision in *Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682 (1975). However, a close reading of *Teada*, which was approved by the Court in *Driscoll*, undermines appellant's position. To elucidate, in *Teada* the accused was charged with selling phencyclidine, a cortrolled substance under Schedule III of the Drug Act, 35 P.S. § 780–104(3)(i)(7). The significant language in Schedule III provides:

"(i) Any material, compound, mixture, or preparation . . . *which contains any quantity of the following substances having a potential for abuse associated with a depressant effect on the central nervous system:*

1. Any substance which contains any quantity of a derivative of barbituric acid, or any salt of a derivative of barbituric acid.

2. Chorhexadol.

3. Glutethimide.

4. Lysergic acid.

5. Lysergic acid amide.

6. Methyprylon.

7. *Phencyclidine.*

8. Sulfondiethylmethane.

9. Sulfonethylmethane.

10.  Sulfonmethane."
(Emphasis added)
35 P.S. § 780–104(3)(i).

At trial, the prosecution established that the substance sold to the agent contained a quantity of phencyclidine; however, the prosecution did not establish the amount of phencyclidine contained in the substance sold.  Furthermore, the prosecution presented no evidence that the quantity of phencyclidine contained in the substance sold would have "... a potential for abuse associated with a depressant effect on the central nervous system."

The *Teada* Court held that the Drug Act manifested a legislative intent to proscribe the possession and delivery of *certain substances* only if they were present in sufficient quantity to have a depressant effect on the central nervous system.  If such was not the case, possession or delivery of such substances was not criminal under the Drug Act.

With this in mind, the Court found the reference to "any quantity" in discussing barbituric acid (35 P.S. § 780–104(3)(i)(1)—which is schematically similar to the set-up under Schedule II of the Drug Act concerning methamphetamine) demonstrated that the legislature clearly intended the *quantitative* requirement when it prohibited the delivery or possession of said substance.  But by the legislature *not* specifying that *any* quantity of the substance set forth in numbers 2 through 10 be prohibited, unless the substances had a "potential for abuse associated with a depressant effect on the central nervous system," the Court interpreted that to mean that the prosecution would have the burden of proving that the substances itemized in Schedule III(i)(2–10) of the Drug Act have a potential for abuse as a condition precedent to establishing a violation of same, but that the legislature specifically excepted from such group any substance which contained "any quantity" of barbituric acid.  Thus, since phencyclidine was not a derivative of barbituric acid, the failure by the Commonwealth to show that the quantity of the drug sold by the accused "had a potential for abuse on the central nervous system," the lower court's grant of the accused's demurrer was affirmed.

Moreover, the *Teada* court, in making its ruling, engaged in a discussion of statutory construction regarding Schedule II of the Drug Act which is germane to the disposition of appellant's claim; *viz.*:

"Schedule I of the Act, supra, lists those substances which have a high abuse potential and no accepted medical use such as heroin and marijuana. The sale or possession of these substances is illegal without regard to quantity. Since these substances have no legitimate use no inquiry into the quantity delivered or possessed is necessary in order to establish its illegality. *Schedule II of the Act involves those substances which have a high abuse potential, but for which there is an accepted medical use. Subsection (i) and (ii) of Schedule II list various substances without regard to quantity. However, subsection (iii) lists four substances stating that the quantity of these substances must have a 'potential for abuse associated with a stimulant effect on the central nervous system.' Furthermore that subsection goes on to proscribe the possession or delivery of one particular substance, methamphetamine, without regard to quantity. See, 35 P.S. 780–104(2)(iii). Obviously the legislature enacted this subsection because it considered methamphetamine in any quantity to be more dangerous than the other substances enumerated in Schedule II.* The statutory scheme is one of imposing greater restrictions on the more dangerous substances and of imposing greater proof requirements on the prosecution as the criminal inquiry moves from the most dangerous substances to the least dangerous ones." (Emphasis added) *Id.*, 235 Pa.Super. at 440, 344 A.2d at 683–84.

We find the remarks in *Teada* to be persuasive and not at odds with the ruling in *Driscoll*. To explicate, the accused in *Driscoll*, as here, was convicted of selling a controlled substance listed under subsection (iii) of Schedule II of the Drug Act. However, the substance the accused in *Driscoll* was charged with selling (amphetamine) is enumerated in a separate and distinct category in the statutory scheme of the Drug Act *vis-a-vis* the drug with which the appellant was

charged with selling (methamphetamine). To illustrate, the pertinent subsection reads:

"... any material, compound, mixture or preparation *which contains any quantity of the following substances, having a potential for abuse associated with the stimulant effect on the central nervous system*:

1. *Amphetamine*, its salts, optical isomers, and salts of its optical isomers.

2. Phenmetramine and its salts.

3. Methylphenidate.

4. *Any substance which contains any quantity of methamphetamine* including its salts, isomers and salts of isomers."

(Emphasis added)

35 P.S. § 780–104(2)(iii).

Given the delineation of amphetamine and methamphetamine in individual paragraphs, as was the case in *Teada* with regard to barbituric acid and phencyclidine, it is clear that the legislature intentionally created a separate category for methamphetamine in Schedule II, subsection (iii)(4) "because it considered methamphetamine in any quantity to be more dangerous than the other substances enumerated in Schedule II." *Commonwealth v. Teada*, supra, 235 Pa.Super. at 442, 344 A.2d at 684. Thus, we agree with the Commonwealth that it was required to prove no more than that some quantity of methamphetamine was sold by the appellant, as compared with having to show that it also had a potential for abuse.[5] The Commonwealth did just that by getting the

5. It is to be noted that such standard of proof is now applicable to all the substances listed in subsection (iii) of Schedule II of the Drug Act; to-wit:

"(iii) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains *any quantity* of the following substances [is considered to be a controlled substance]:

1. Amphetamine, its salts, optical isomers, and salts of its optical isomers.

2. Phenmetrazine and its salts.

3. Methylphenidate.

appellant to stipulate that had the chemist who analyzed the substance appeared he would have testified that the powder contained methamphetamine hydrochloride, and that the total weight of the powder was "fifty-four point seven eight grams." (N.T.154) Couple this with the Commonwealth's witnesses' testimony linking the appellant with the sale of the drug, and we conclude that sufficient evidence was presented to sustain appellant's conviction.

The last prong of appellant's sufficiency of evidence argument centers around the averment that the Commonwealth failed to prove that he was not licensed in accordance with the law to possess or otherwise deal in drugs.

■ Appellant concedes that this Court's ruling in *Commonwealth v. Sojourner*, 268 Pa.Super. 488, 408 A.2d 1108 (1979), wherein we held that unless the accused comes forward with some evidence of authorization the Commonwealth need not disprove authorization beyond a reasonable doubt, controls the case *sub judice*. Nevertheless, he submits that the Court should "reexamine its ... decision and require the Commonwealth to meet what is clearly its burden of proof." We disagree. The appellant's contentions, which were dealt with in *Sojourner*, do not persuade us to alter the ruling in *Sojourner*, nor to embark on a reevaluation of the rationale for such decision.

At trial, the appellant neglected to produce any evidence of licensure; thus, it was not necessary for the Commonwealth to prove his non-licensure beyond a reasonable doubt.

Judgment of sentence affirmed.

4. Methamphetamine including its salts, isomers and salts of isomers."
(Emphasis added)
35 P.S. § 780–104(2)(iii), as amended Nov. 26, 1978, P.L. 1392, No. 328, § 1, eff. in 60 days (Supp.1981–82).