446 A.2d 644

**COMMONWEALTH of Pennsylvania**

v.

**Bernard JONES, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Bernard DICKERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed June 4, 1982.

Petition for Allowance of Appeal Denied Nov. 29, 1982.

340

Thomas G. Gavin, West Chester, for appellants.

Lee Ruslander, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This case involves appeals *nunc pro tunc* from the judgments of sentence, which was granted by this Court in a Per Curiam order dated March 24, 1980 [No. 499 Misc.Dkt. No. 11], to the appellants, Bernard Jones and Bernard Dickerson. These two appeals were then consolidated by our Court for briefing and argument. We affirm.

On September 15, 1976, Jones was adjudged guilty by a jury of theft by unlawful taking or disposition, three counts of simple assault, two counts of robbery, burglary, recklessly endangering another person, unauthorized use of a vehicle and criminal conspiracy. Dickerson was tried in the same proceeding and, like his counterpart, was found guilty of theft by unlawful taking, three counts of simple assault, two counts of robbery, one count of rape, burglary, recklessly

endangering another person, unauthorized use of a vehicle, violation of the Controlled Substance, Drug, Device and Cosmetic Act and criminal conspiracy. Combined post-trial motions were filed on behalf of the appellants and denied by Opinion of the trial court on November 19, 1976. Each appellant was sentenced to a term of five to ten years imprisonment. No appeals were taken.

In March of 1979, appellants filed *pro se* Post-Conviction Hearing Act (PCHA) Petitions,[1] alleging, *inter alia*, the denial of their right to competent counsel. In light of the claim made, and given the fact that appellants were represented by counsel from the public defender's office of Chester County at every stage of the litigation, the trial court appointed private counsel to assist the appellants. *See Commonwealth v. Massie*, 294 Pa.Super. 115, 118, 439 A.2d 777, 778 (1982) (" '[A] PCHA petitioner, represented by court-appointed counsel and alleging ineffective assistance of trial counsel, may not be represented by an attorney from the office with which the allegedly ineffective attorney was associated.' " (Citations omitted)).

A hearing was scheduled. At the commencement of said proceeding, "with regard to one part of the application," the attorneys entered into a "stipulation[ ] for the Court[,]" regarding the question of appeal. On this point, both attorneys agreed that appellants communicated their desire to appeal to the attorney representing them at the sentencing. However, despite sentencing counsel's submission of an inner office memo instructing the appellate division of the public defender's office of appellants' intentions, no appeals were filed. (N.T. 11/23/78, at 3–4) In the remaining portion of the hearing, appellants testified that they felt trial counsel was ineffective because they "didn't have enough time to talk with him." (N.T. 11/23/78, at 18 and 25) Bernard Jones also testified that counsel failed to secure certain witnesses, which he admitted "having no idea" as to their identity or whereabouts, who would have corroborated

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. §§ 1180–1 *et seq.* (Supp.1975).

his story of having shopped for an automobile on the day of the incident. (N.T. 11/23/78, at 20) After the hearing, the PCHA court determined that appellants had been denied their right to a direct appeal. The court therefore properly refused to consider the other claims,[2] *Commonwealth v. Stackpole*, 275 Pa.Super. 255, 418 A.2d 709 (1980), and entered an order dated April 19, 1979, granting appellants the right to file a direct appeal *nunc pro tunc* to this Court. We, in turn, granted appellants' "Petition for Allowance to Appeal Nunc Pro Tunc" by Per Curiam order issued on March 24, 1980. Pursuant to that order, appellants filed in the court below a notice of appeal from their judgments of sentence of December 9, 1976. Thereafter, on September 25, 1980, the two cases were consolidated for purposes of appeal.

**2.** This undermines the Commonwealth's contention that "[t]he PCHA Court, upon request of defense counsel, decided no issues but merely granted leave for defendant to appeal Nunc Pro Tunc .... With this request, defense counsel waives his right to appeal any issues which first could have been ruled upon by the PCHA Court." (Commonwealth's Brief at 7)

In *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977) our Supreme Court stated that "the preferred practice is for a Post Conviction Hearing Court, having determined that petitioner is entitled to a direct appeal, to refrain from rulings upon the merits of the remaining claims for relief because they will be reviewable on the direct appeal process. *Commonwealth v. Webster*, 466 Pa. 314, 318–319, 353 A.2d 372, 374 (1975) (and cases cited therein). The only justification for a deviation from this *practice* is where the trial record is inadequate to provide a basis for a review of the claim or where the claim was not ruled upon by the trial court." (Emphasis added) *Id.*, 472 Pa. at 140 n. 5, 371 A.2d at 473 n. 5. Such "practice" has been interpreted by this Court, in accordance with the dictates of *Webster* and *Sullivan*, to mean:

"[O]nce the PCHA court determines petitioner has been deprived of his appellate rights, it should refrain from ruling upon the *merits* of the other claims and should grant petitioner the right to file an appeal *nunc pro tunc* .... [However, such abstention is not absolute, for] *it is clear that the PCHA court must address the other claims raised in the PCHA petition when it is necessary to complete the record for appellate review*; but under these circumstances, the PCHA court is merely functioning as an evidentiary tribunal." (Emphasis added) (Footnote omitted) *Commonwealth v. Miranda*, 296 Pa.Super. 441, 453–54, 442 A.2d 1133, 1138 (1982). *Accord Commonwealth v. May*, 296 Pa.Super. 435, 442 A.2d 1129 (1982); *Commonwealth v. Clark*, 296 Pa.Super. 315, 442 A.2d 786 (1982).

Appellants' filing of the notice within thirty (30) days, pursuant to our Per Curiam order, brings this appeal properly before us. *See Commonwealth v. Stackpole, supra.*

The issues raised by appellants' appellate counsel concern: 1) the sufficiency of the evidence; 2) the commission of error by the trial court in commenting on the Commonwealth's evidence in the charge to the jury; 3) the commission of error by the trial court in its instruction on the defense of intoxication; and 4) trial counsel's stewardship.

■ Before addressing the merits of appellants' averments, we find it appropriate to discuss a procedural matter. In 1976, appellants filed post-verdict motions which are *exactly the same* as the first three issues presented in their appeal to this Court. Given the fact that the trial court disposed of same in its Opinion, the PCHA court cannot be faulted for failing to comply with "[t]he preferable procedure ... [of] allow[ing] appellant[s] the opportunity to file with the court below post-trial motions[ ]" after determining that the accuseds' right to appeal had been violated. *Commonwealth v. Webster*, 466 Pa. 314, 319, 353 A.2d 372, 374 (1975). Since such practice is preferred because it affords the accused the opportunity to narrow the issues on appeal, such objective was satisfied here not only when appellants filed post-verdict motions, but when the trial court made a ruling on their merits. Consequently, the disposition of such post-trial motions obviates the need for a remand. *See, e.g., Commonwealth v. May*, 296 Pa.Super. 435, 439 n. 3, 442 A.2d 1129, 1131 n. 3 (1982) (the remedy of a *nunc pro tunc* appeal is appropriate where post-verdict motions have been filed and argued in the case); *Commonwealth v. Stackpole, supra* (appellant in 1964 filed post-verdict motions which raised all issues presented in his (1980) appeal *nunc pro tunc*; however, since the issues were never disposed of by the trial court the case was remanded).

■ In reviewing the merits of appellants' sufficiency of evidence argument, we must accept as true all of the Commonwealth's evidence and all reasonable inferences flowing

therefrom, upon which, if believed, the fact-finder could have based his verdict. The test then becomes whether such evidence, viewed in the light most favorable to the verdict winner, is sufficient as a matter of law to prove guilt beyond a reasonable doubt. *Commonwealth v. Harrison*, 289 Pa.Super. 126, 432 A.2d 1083 (1981).

The testimony produced at trial demonstrated that on the evening of May 14, 1976, Ms. Patricia Fulton was confronted in her home by two intruders. The shorter of the two men, who was armed, forced her into the bedroom. She told the intruders that there was money in the bottom drawer of the bureau. The shorter man walked over to the bureau and the taller one ordered Ms. Fulton to lie on the bed and remove her slacks. When she refused, the individual threatened to harm her. So, fearing that she would be shot or beaten, Ms. Fulton did not resist the assailant. During the assault, Ms. Fulton's boyfriend (Richard Jones) arrived at the home. When the victim screamed to warn him of the intruders, she was struck in the face by the taller of the two men with such force that she fell against the vanity and injured her back—Ms. Fulton also sustained a black eye and bruised face. At this point, Mr. Jones stepped into the bedroom and was greeted with a gun in his face. He grabbed the weapon from the shorter man and they stumbled into the living room. Jones was unsuccessful in disarming his attacker and finally submitted. Thereafter, he was taken into the bedroom and tied to the bed post, while Ms. Fulton had her hands bound. The two culprits then left the premises and took the victim's car in the process.

At trial, Ms. Fulton testified that she was robbed of $170.00 by the appellants and identified Dickerson as the rapist. Ms. Fulton's boyfriend reaffirmed the victim's identification testimony and pointed out Bernard Jones as the person with whom he had fought. Appellants' version of what happened was quite different. They testified that on the day in question they were in the market for a vehicle and spent most of the day going to different dealerships. When their efforts proved fruitless, they recalled that Ms.

Fulton lived in the area. The appellants recounted that they had met her on two prior occasions and they had smoked marijuana at her home. In particular, Dickerson recounted that on the second occasion he met Ms. Fulton they ended up having "an affair."

Appellants went on to recall that Ms. Fulton permitted them entry into her premises, that the three of them smoked marijuana and that she sold her car to them for $180.00. Next, Jones stated that Ms. Fulton gave Dickerson a .38 revolver for a "bundle of dope," whereas Dickerson recalled that Ms. Fulton gave him the weapon to see what he could "get for it" in Philadelphia. Also, according to Dickerson, he and Ms. Fulton engaged in a consensual act of intercourse on the evening in question. The two (Jones and Dickerson) then left in Ms. Fulton's automobile, but, being somewhat "intoxicated" from the marijuana, Jones wrecked and he and Dickerson pushed the vehicle off to the side of the road. Thereafter, the two were arrested by police.

As is true in most cases where the testimony of the witnesses are at odds, it is for the trier of fact to decide whom to believe. *Commonwealth v. Tumminello*, 292 Pa.Super. 381, 437 A.2d 435 (1981). It is obvious from the verdict entered here that the jury disbelieved the appellants. After a thorough review of the record, we find no reason to disturb the jury's decision. As we have stated so often, "[t]o do otherwise, in light of the facts presented, would be to invade the bailiwick of the trier of fact in the absence of 'evidence . . . so unreliable and/or contradictory as to make any verdict based thereon pure conjecture . . . .' " (Citations omitted) *Commonwealth v. Graeff*, 296 Pa.Super. 480, 486, 442 A.2d 1153, 1156 (1982); *see also Commonwealth v. Tumminello, supra; Commonwealth v. Harrison*, 290 Pa.Super. 389, 434 A.2d 808 (1981).

We now turn our attention to appellants' second and third assertions, which complain that error was committed by the trial court in: 1) discussing the Commonwealth's theories of the case; and 2) arguing a viewpoint on the charge of intoxication that had not previously been expounded by the Commonwealth.

Appellate counsel cites us to no specific portion of the charge in making out either claim. This is of no moment, however, for in evaluating the correctness of the instructions to a jury, the charge must be read and considered as a whole, for it is the general effect of the charge that controls. *Commonwealth v. Rodgers*, 459 Pa. 129, 132, 327 A.2d 118, 120 (1974). We have done so and are in accord with the lower court that:

> "The jury was clearly charged as to their factfinding roles as indicated by the following excerpt from the Charge which appears at page 274 of the Notes of Testimony:
>
>> 'As the fact finder you are charged with the duty of remembering the testimony and remembering it correctly, and this is so whether the testimony is the subject of comment by the attorneys in their summation or by me in the charge. If our recollection of that testimony differs from yours it is your recollection which controls because you are the exclusive judges of the facts and it would be most improper for us to invade your province as fact finder and you must be careful that we do not do that. I assure you it would not be intentional but the law is that it is the jury's recollection of the facts from the testimony and from the physical exhibits that controls.'
>
> In charging a jury, it is the principal duty of the Trial Judge to clarify the issues so that the jury may understand the questions to be resolved. *Commonwealth v. Beach*, 438 Pa. 37[, 264 A.2d 712] (1970). It was in pursuit of the mandate recited immediately above that great effort was expended by the Trial Judge to focus the attention of the jury on the issues to be resolved as the same were fairly raised by the evidence and the law. Contrary to the assertions of the defense, under any fair reading of the Charge of the Court on the specific areas raised as to rape, recklessly endangering, unauthorized use of a motor vehicle and the defense of intoxication, there were no inflammatory, prejudicial or opinionated recitations by the Trial Judge but a relatively simple delineation

of the contentions of each of the parties. See *Commonwealth v. Bartell*, 184 Pa.Super. 528[, 136 A.2d 166] (1957); *Commonwealth v. McHugh*, 187 Pa.Super. 568[, 145 A.2d 896] (1958); *Commonwealth v. Crawford*, 452 Pa. 326[, 305 A.2d 893] (1973); *Commonwealth v. Goins*, 457 Pa. 594[, 321 A.2d 913] (1974)." (Lower Court Opinion at 4–6).

Finally, appellate counsel contends that trial counsel was ineffective because he failed to have any discussion with his clients, i.e., appellants never saw the attorney until moments before the jury was to be selected and appellants had no opportunity to discuss the case with him.

■■■ Since the decision in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), the courts of this Commonwealth have often repeated that mere shortness of time spent in conference with a client does not per se establish ineffectiveness on the part of retained or appointed counsel. *Commonwealth v. Owens*, 454 Pa. 268, 312 A.2d 378 (1973) (citing cases). No issue is raised by either side in this appeal concerning the lack of a discussion of this point by the PCHA court. Concerning this subject, our Supreme Court said in *Commonwealth v. Woody*, 440 Pa. 569, 574, 271 A.2d 477, 480 (1970):

"[N]o weight [is] given . . . to the allocation of the burden of proof in this area. What is needed is an independent judicial review of the record. Preferably, that independent review should occur initially in the trial court. However, if no such independent review has occurred at the trial level, and if the record is complete enough to support such an examination, this Court then should undertake the task . . . ." *Accord Commonwealth v. Bronson*, 457 Pa. 66, 69, 321 A.2d 645, 646 (1974); *Commonwealth v. Harper*, 233 Pa.Super. 294, 299 n. 3, 334 A.2d 761, 763 n. 3 (1975).

This Court can therefore proceed to decide the question posed. Initially, we note that in appellants' evidentiary hearing the grounds for their claim of ineffective assistance of counsel consisted of the denial of their right to appeal, which we have already discussed *supra*, and the shortness of

time spent conferring with their attorney prior to trial.[3] An examination of the testimony of each appellant at the PCHA hearing undermines the latter averment. To explicate, both appellants testified that he met with Attorney Haltrecht, a public defender who handled the pre-trial work on the case, for about "fifteen minutes."[4] (N.T. 11/23/78,

**3.** At the PCHA hearing, only Dickerson complained about trial counsel representing both he and Jones at the joint trial. Appellate counsel now asserts, on behalf of Jones and Dickerson, that counsel was less than effective for not requesting a continuance to reassess the feasibility of representing both appellants at one trial. In the interest of judicial economy, since this issue has been briefed by both sides, and to avoid the filing of a subsequent PCHA petition by Jones claiming appellate counsel's ineffectiveness for not raising the issue sooner, we will address the matter as to both appellants.

Our dual representation cases make several principles clear. We need only mention two of those precepts to dispose of appellants' averment; *viz.*: "[A] defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does *not* amount to a conflict of interest.' ... [A]ppellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.'" (Citations omitted) (Emphasis in original) *Commonwealth v. Breaker*, 456 Pa. 341, 345, 318 A.2d 354, 356 (1974).

Here, our review of the trial transcript (N.T. 9/14/76, at 160–265), reveals that Jones' and Dickerson's accounting of what happened were mirror images of each other. In other words, each version was consistent with, and not mutually exclusive of, the other. Thus, according to the standard delineated in *Breaker*, appellants have failed to prove that a conflict of interest existed. This is especially true if one considers that neither appellant had "a defense inconsistent with that advanced by the other client," nor did counsel neglect one appellant's case in order to give a more spirited defense to the other. *Commonwealth v. Breaker, supra.*

**4.** Our review of the record evidences an affidavit submitted by Attorney Haltrecht to the lower court which refutes such testimony. The affidavit reads, in relevant part, as follows:

"I first interviewed each defendant, separately, at Chester County Farms Prison on June 3, 1976. As I recall, I spent at least one hour with each defendant. During the initial interview, I took notes on each defendant's account of the incident in question and I took down information as to each defendant's prior criminal record and information relevant to a Petition to Reduce Bail.

\* \* \* \* \* \*

I recall seeing the defendants at least one other time at Chester County Farms Prison.

at 8 and 24)  On the day set for trial, appellants met with Attorney Van Steenburgh, another public defender, this time it was for about ten or fifteen minutes.[5]  (N.T. 11/23/78, at 11 and 25)  Additionally, each appellant conceded that he had the opportunity to confer with counsel during the course of the trial, to tell Attorney Van Steenburgh what the basic facts were surrounding the case, and their theory or version of the case.  (N.T. 11/23/78, at 11, 14, 17, 29 and 34)  More importantly, a perusal of the trial transcript discloses that defense counsel was diligent in presenting objections and cross-examining witnesses during the

> Shortly before trial in these matters, I had to ask D. Benjamin VanSteenburgh, Esquire, to represent both defendants[.]  I spent about an hour going over the file with Mr. VanSteenburgh ...."
> (Affidavit notarized on April 4, 1979)
> Although such document presents a conflict in the testimony which is best resolved by a finder of fact and not an appellate court, we note its existence as at least some evidence to rebut appellants' contention that "trial counsel failed to have any discussion with his client[s]."  (Appellants' Brief at 12.)

5.  This is countered in the Commonwealth's brief by reference to a deposition given by trial counsel on February 13, 1979, that "he spent hours" prior to trial discussing testimony and possible questions with Jones and Dickerson.  Moreover, the Commonwealth attributes trial counsel with testifying that "in all the criminal cases he ha[d] tried in Chester County, he ha[d] never put defendants on the stand to testify without going over the testimony in great detail.  (N.T. Feb. 13, 1979, at p. 18)."  (Commonwealth's Brief at 14); see Commonwealth v. Waters, 441 Pa. 511, 516, 273 A.2d 329, 331 (1971) (the testimony of counsel whose stewardship was being challenged "regarding his customary procedures in criminal cases is to some extent probative that he did follow such procedures in this particular case."); see also Commonwealth v. Hill, 450 Pa. 477, 301 A.2d 587 (1973).  Further, the Commonwealth points to counsel testifying that "he reviewed the tape recording of the preliminary hearing and the remainder of the file before ...." the trial.  (Commonwealth's Brief at 15) Unfortunately, this Court does not have the benefit of examining the deposition of trial counsel first-hand, since it was not included in the records forwarded to this Court by the Prothonotary.  See Commonwealth v. Rini, 285 Pa.Super. 475, 483, 427 A.2d 1385, 1389–90 (1981) (appellate court may not consider facts outside the record; e.g., allegations in a party's brief, even when not "substantially challenged," are not part of the record); see also Commonwealth v. Bowermaster, 297 Pa.Super. 444, 444 A.2d 115 (1982) (SPAETH, J., Concurring and Dissenting Opinion).  Nonetheless, we conclude that the PCHA and trial transcripts are sufficient evidence upon which to

Commonwealth's case. Counsel also presented a comprehensive case of his own, calling Jones and Dickerson to the stand and examining them extensively. Based on the aforesaid, we are of the opinion that Attorney Van Steenburgh understood the facts of the case in conducting the appellants' defense, *see, e.g., Commonwealth v. Fox*, 272 Pa.Super. 8, 414 A.2d 642 (1979); therefore, appellants' claim of prejudice because of an allegedly late appointment of counsel is meritless. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978); *Commonwealth v. Couch*, 442 Pa. 402, 275 A.2d 112 (1971) (counsel appointed 15 to 30 minutes prior to nolo contendere plea, no prejudice shown); *Commonwealth v. Skipper*, 440 Pa. 576, 271 A.2d 476 (1970) (counsel appointed 15 to 20 minutes prior to trial, no prejudice established); *see also Commonwealth v. Nero*, 250 Pa.Super. 17, 378 A.2d 430 (1977); *Commonwealth v. Warner*, 228 Pa.Super. 31, 324 A.2d 362 (1974).

Finding no merit to any of appellants' contentions, we affirm the trial court's judgments of sentence.

MONTEMURO, J., concurs in the result.

make a determination that appellants were not given inadequate representation at trial.