456 A.2d 1383

**COMMONWEALTH of Pennsylvania**

v.

**Clayton Lee NELSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 14, 1982.

Filed Feb. 18, 1983.

Petition for Allowance of Appeal Denied June 3, 1983.

4

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

Helen T. Kane, Assistant District Attorney Media, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

After a jury trial, appellant, Clayton Lee Nelson, was found guilty of Rape (18 Pa.C.S.A. § 3121), Involuntary Deviate Sexual Intercourse (18 Pa.C.S.A. § 3123), Burglary (18 Pa.C.S.A. § 3502) and Simple Assault (18 Pa.C.S.A. § 2701). Following the denial of post-trial motions, appellant was sentenced to a term of imprisonment of 3 to 11 years for Rape, 1 to 2 years for Involuntary Deviate Sexual Intercourse and 1 to 5 years for Burglary. Sentence was suspended for the Simple Assault conviction and all sentences were ordered to be served concurrently. This appeal followed. We affirm.

On appeal, appellant asserts that: 1) the trial court erred in not permitting him full access to the subpoenaed records of the rape crisis center; 2) the trial court erred in refusing to permit him to be asked whether the police had offered him a polygraph test; and 3) trial counsel was ineffective.

The evidence, viewed in the light most favorable to the verdict-winner, the Commonwealth here, *Commonwealth v. Lee,* 460 Pa. 374, 333 A.2d 773 (1975), consists of the following: At approximately 5:30 a.m. on the 21st of September, 1980, Ms. Cupelli was awakened by a "stirring" that sounded like breathing coming from the foot of her bed. Upon turning the light on, she saw a man on the floor beside her bed. He had his head down. When she asked who he was and what he wanted, "he turned his face to look at [her] and [she] recognized him immediately as Clay Nelson . . . ." (N.T. 43) Ms. Cupelli knew the intruder because he had lived in a duplex directly across from her apartment for the first six months of 1980, and she had occasion to speak to him about eight times during that period. At this point, when appellant moved toward Ms. Cupelli, she screamed. The appellant reacted by placing an arm lock around the victim's neck, forcing her face into the pillow and turning out the light. The victim struggled for awhile, but her resistance waned when the assailant promised not to hurt her if she refrained from fighting, screaming or making noise. The victim complied, for she thought

that if she resisted further she would be either strangled or suffocated.

During the ensuing hour, Nelson compelled the victim to submit to oral, anal and vaginal intercourse. When the ordeal was over, the victim phoned a friend to tell her that she had been raped, and that she knew the assailant. The friend advised her to consult the "Women Against Rape" center in Philadelphia. The victim did so and was told to seek treatment at a hospital that had a rape care unit. After the victim had located such a hospital, she contacted the police.

When the police arrived on the scene, the victim showed them the screen that had been pulled out from the living room window and a rolled up paint cloth that had been left on the floor next to her bed by the assailant. The victim also informed the authorities that the guilty party "was the person who used to live across the street ... in the duplex." (N.T. 56) An examination of the duplex produced a piece of cloth from the porch and something in the door with a name on it. When the police asked the victim, "does Clayton Nelson sound familiar to you? [The victim] said that Clay did. The name Clay, that was the name." [1] *Ibid.* Thereafter, the police transported Ms. Cupelli to Bryn Mawr Hospital where she was treated for rape. Tests conducted upon the victim indicated the presence of sperm in her vagina and other signs consistent with the reported assault.

Based on the evidence secured, an investigation was undertaken leading to the arrest of the appellant on September 22, 1980.

Initially, appellant asserts that the lower court erred in refusing to permit the trial attorney to examine all of the records compiled on the case by the "Women Against Rape" center, since "[t]he interview with the alleged victim was taken under circumstances wherein there was no confiden-

---

**1.** The victim demonstrated a positive and unwavering certainty in identifying the appellant as her assailant at the confrontation at trial. (N.T. 65–66) *See Commonwealth v. Pifer,* 284 Pa.Super. 170, 183, 425 A.2d 757, 762 (1981).

tiality involved." (Appellant's Brief at 5) Moreover, appellant urges "that the defense counsel rather than the Court knows best what statements of the witness would be helpful for cross examination relative to impeachment." (Appellant's Brief at 7) An examination of the facts, when aligned against the relevant case law, reveals the fallacy in both of the appellant's averments.

Prior to trial, defense counsel served a subpoena upon "Women Against Rape" (WAR) to compel production of "all documents, memoranda, writings or reports pertaining to said rape incident" in their files. WAR, through its attorney, resisted compliance with the subpoena on the basis of the decision of *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981). In the midst of trial, the court, at an *in camera* proceeding, agreed to read to the defense only selected portions of WAR's files marked "data forms". To-wit:

> "And under number 9 on Page 1 where it says marital status, the thing that is circled is single. For the marital status of course of the victim. On Page 3 under the heading victim—offender relationship, Number 17 is circled and it says injured more seriously. That's what's typed in. On Page 5 topic is hospital used and a line for a name to be written above it and Bryn Mawr is written above it. Number 63—Question Number 63 or item Number 63. That's it. All right? Anything further? MR. LORD [Appellant's trial counsel]: No, sir." (N.T. 68)

After the disclosure in-chambers, the trial proceeded to its conclusion.

It is interesting to note that all parties concerned, including the lower court, make mention of the testimony of a WAR representative concerning the information gathering procedure that was utilized in preparing the report on Ms. Cupelli's case. That is, according to the purported testimony given at an in-chambers inquiry, the WAR representative revealed that the "data form" was a compilation of information secured from the police, an interview conducted with

the Assistant District Attorney, the victim and the representative and testimony from the preliminary hearing. (*See* Commonwealth's Brief at 4; Appellant's Brief at 6 and Lower Court Opinion at 8) This, appellant urges, impugns the "confidentiality" so necessary to insulate those "statements" made during the rape counseling session from disclosure. Thus, appellant vigorously argues that he was entitled to access to the *entire* file of the rape crisis center.

■ Except for the mention of such testimony in the briefs of both parties to the litigation and in the lower court's Opinion, there is an absence of any *record evidence* that the proceedings were actually transcribed and/or forwarded to this Court. Ordinarily, this deficiency would preclude this Court from reviewing the merits of the argument made, since a court may not consider facts outside the record. *Commonwealth v. Young*, 456 Pa. 102, 115 n. 15, 317 A.2d 258, 264 n. 15 (1974). Remarks made by counsel in a brief cannot be considered, inasmuch as they are not equated with evidence of record. *See Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981).

However, in the interest of judicial economy, since the issue has been briefed by both sides and discussed by the lower court in its Opinion, we will address the matter. *See Commonwealth v. Sudler*, 496 Pa. 295, 301, 436 A.2d 1376, 1379 (1981); *Commonwealth v. Jones*, 300 Pa.Super. 338, 348 n. 3, 446 A.2d 644, 649 n. 3 (1982).

■ In the case of *In the Matter of Pittsburgh Action Against Rape, supra*, our Supreme Court considered the extent to which a court presiding over a rape trial may authorize counsel for the accused, seeking to impeach the credibility of the complainant, to inspect a rape crisis center file containing communications between the complainant and rape crisis center personnel. In the course of its decision, the Court refused to embrace a rule authorizing an absolute privilege for all communications between rape crisis personnel and persons seeking their assistance. Rather, the Court held that:

"[U]pon defense request a court should authorize defense inspection of only those statements of the complainant contained in the file which bear on the facts of the alleged offense. The court, however, must not permit defense inspection of statements of the complainant having no bearing on the facts of the alleged offense and relating instead only to the counselling services [the rape crisis center] provides. The trial court shall not permit defense review of any other aspect of the file." 494 Pa. at 19, 428 A.2d at 127–128.

In an attempt to clarify the perimeters of what "statements" are accessible to the defense, and, who, in the first instance, is to make that decision, the Court went on to state:

"[O]nly 'statements' of the complainant, and not interpretations or recollections of the [rape crisis center] counsellor, are to be made available. Statements of the complainant include only notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said.

\*   \*   \*   \*   \*   \*

The trial court should make whatever inquiry is necessary to determine whether matters contained in the [rape crisis center] file are indeed 'statements.' The trial court's inquiry must, of course, be conducted *in camera*." 494 Pa. at 28, 428 A.2d at 132.

From the preceding language, as well as a reading of the entire Opinion, we conclude that the Supreme Court did not intend defense counsel, figuratively speaking, to be looking over the trial court's shoulder when the determination is being made as to exactly what information is or is not a statement of the complainant. In other words, it is the trial court that is cloaked with the responsibility to decide what, if any, "statements reflecting counselling shall be withheld from defense *inspection*." (Emphasis added) 494 Pa. at 29, 428 A.2d at 132.

■ Instantly, the trial court complied with the dictates of the *Pittsburgh Action Against Rape* case in conducting an *in camera* perusal of the complainant's WAR file. Additionally, and more importantly, our review of the evidence substantiates the trial court's ruling that it "revealed all information that was on the fact sheet ["data form"] that could be considered *statements of the victim.*" (Emphasis in original) (Lower Court Opinion at 8) As a result, we find no error to have been committed below.

Next, appellant contends that the trial court erred in not allowing him to answer the question of whether he had been asked by police to submit to a polygraph examination. It is to be observed that such inquiry, an objection to which was sustained by the trial court in favor of the Commonwealth, was initiated by defense counsel. It seems that appellant's counsel elicited a positive response from the victim when he asked her, on cross-examination, whether the police had requested that she take a polygraph test. (N.T. 114) Given this admission, appellant is of the mind that the defense was entitled to negate the idea that he failed a similar test. Stated differently, appellant postulates that because "the question of polygraph [was] before the jury, the Court owed a duty to allow the defense to correct the imbalance, i.e. that the prosecutrix possibly passed a polygraph, that the appellant possibly failed." (Appellant's Brief at 9) We do not agree.

■ To start with, in view of the inherent unreliability of a polygraph examination, the Supreme Court of this Commonwealth has repeatedly held that any reference to such examinations which raises an inference concerning either the guilt or innocence of a defendant is inadmissible. *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied,* 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972); *Commonwealth v. Kemp,* 270 Pa.Super. 7, 410 A.2d 870 (1979). Evidence of the results of such tests remain inadmissible even in the face of a knowing, voluntary and intelligent stipulation that they may be submitted into evi-

dence.  *Commonwealth v. Pfender,* 280 Pa.Super. 417, 421
A.2d 791 (1980).   As correctly noted by the trial court:
"By doing this [—i.e., Defendant inquiring whether the
police asked the victim to take a lie-detector test], the
Defendant does not then have the right to counter by
suggesting that the police officers did or did not offer the
Defendant the same opportunity, or that he would have
taken the test if offered.

The Defendant's attorney having adopted the strategy
of attempting to show that the police had some question
as to the truth of the victim's statements, the Defendant
cannot complain that the Commonwealth's objection to
Defendant being asked if he was given an opportunity to
take the test was sustained."  (Lower Court Opinion at 6)
Therefore, we find that the trial court properly sustained
the Commonwealth's objection to defense counsel's ques-
tion.

■   Lastly, appellant avers that trial counsel was ineffec-
tive for: 1) not making an opening statement;  2) asking him
very few questions on direct examination;  3) filing a Notice
of Alibi, but failing to produce the witnesses named therein;
4) never asking the victim if she wore corrective lenses;  and
5) failing to file a pretrial motion to dismiss on the basis
that the Informations were signed with the rubber-stamped
signature of the District Attorney of Delaware County.
None of the assertions of ineffectiveness was raised in the
court below.   However, this deficiency does not foreclose
this Court from reviewing the merits of said claims since
private trial counsel represented the accused during pre-tri-
al, trial and post-trial proceedings.   In fact, trial counsel
filed post-trial motions, and it was not until an appeal had
been perfected from the judgment of sentence that trial
counsel withdrew from the case and a public defender was
appointed.   Consequently, this appeal being the first occa-
sion on which appellant is represented by counsel other than
the one whose stewardship is being questioned, we cannot
fault him for failing to raise the issues sooner.  *Common-
wealth v. Cooke,* 288 Pa.Super. 205, 431 A.2d 360 (1981).

12

Before reaching the merits of the claims, we observe that "counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen had *some reasonable basis* designed to effectuate his client's interests." (Emphasis in original) *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). "Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we conclude that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Id.*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. In our opinion, such a conclusion is not justified in the case at bar.

The difficulty in this case, as in most cases where the claim of ineffectiveness of counsel is proffered on appeal, is that we have before us no record of any hearing at which is set forth trial counsel's reasons for taking the steps later challenged. Nonetheless, the usual method of remanding to the lower court for an evidentiary hearing at which trial counsel may state his reasons for having chosen the course of action taken, *see Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975), is not necessary here, for it is apparent from the record that the actions claimed to constitute ineffectiveness were in fact within the realm of trial strategy or tactics. *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608 (1973), *cert. denied*, 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973); *Commonwealth v. Hudson*, 455 Pa. 117, 314 A.2d 231 (1974).

The first issue raised by appellant under the rubric of ineffectiveness deals with trial counsel's failure to present an opening statement to the jury, either following the prosecution's opening statement or after the close of the Commonwealth's case.

The purpose of an opening statement is to apprise the jury how the case is to develop, its background, and what will be attempted to be proved; but it is not evidence. 10A P.L.E. Criminal Law § 583 (1970). Also, under Pa.R.

Crim.P. 1116(a), a presentation of opening remarks by defense counsel is directory, e.g., "... defendant or his attorney may ... make an opening statement to the jury[,]" and is not mandatory. As a result, the right may be waived as a matter of trial strategy. *Cf. Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976) (right to a summation by a defendant may be waived, and the decision whether or not to waive is a matter of trial strategy).

■ Instantly, the trial of the case was of short duration, two days, and the evidence was clear and simple. No one disputed the commission of the assault; the defense was merely that Clayton Lee Nelson did not commit the complained of offenses. Thus, the question was one of credibility. Accordingly, we fail to see how the absence of an opening statement by counsel so prejudiced the accused in the eyes of the jury that there is no alternative but to hold counsel ineffective and grant a new trial. Since appellant has failed to establish incompetency or the presence of exceptional circumstances, counsel's strategic decision to forego an opening statement is binding on the appellant-client. *See Commonwealth v. Gambrell*, 450 Pa. 290, 301 A.2d 596 (1973). We find no reason to label trial counsel less than effective.

■ Appellant next alleges that trial counsel was ineffective for restricting the questions asked of him to whether he had committed the offenses or whether he had ever been in the victim's apartment—the responses to both were in the negative. Appellant states that counsel should have developed the record regarding his whereabouts on the evening in question, as well as who may have been with him. Since it appears that this void was filled by appellant's testimony on cross-examination, it would be incongruous to hold counsel inept for not presenting this information during the appellant's direct examination. To elaborate, appellant testified to stopping at "Il Primo's," a pizza place, and drinking there for an hour. Next, he recounted making his way to the Malvern Tavern and staying for half-an-hour before going to the Candlewick Diner in Malvern, Pa., for

something to eat. Thereafter, at approximately 3:00 a.m., appellant remarked that he returned to his apartment and did not go out for the remaining part of the evening.

Thus, because the evidence to establish the same facts was introduced at trial on cross-examination of the accused, we find no reason to hold counsel ineffective for not presenting it, first, during appellant's direct examination. *Cf. Commonwealth v. Tumminello*, 292 Pa.Super. 381, 437 A.2d 435 (1981) (where appellant admitted knowledge of and association with co-conspirator, effect of erroneously admitted evidence of same facts by Commonwealth in its case-in-chief was neutralized). Also, because the scope of the examination and cross-examination of witnesses is clearly within the province of trial counsel, *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978), and given the particular facts of this case, we find appellant's claim of ineffectiveness to be without merit.

The third prong of appellant's ineffectiveness argument is framed, in his Brief, as follows: "Trial counsel filed a Notice of Alibi which contained the names of Joseph Darah and Chris Nelson as witnesses. These witnesses were never called to testify, even though the appellant's defense was alibi." (Appellant's Brief at 11) Our review of the record does not support such an allegation.

Nonetheless, assuming arguendo that such witnesses did exist, we are not persuaded to find counsel ineffective, for it is clear that trial counsel's failure to present a possible witness is not per se ineffectiveness on counsel's part. Counsel need not call every person mentioned by a defendant. *Commonwealth v. Robinson*, 232 Pa.Super. 328, 334 A.2d 687 (1975). Moreover, the failure to call a possible witness will not be equated with a conclusion of ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Charleston*, 251 Pa.Super. 311, 380 A.2d 795 (1977). Such is not the case instantly. As noted above, appellate counsel merely alleges that trial counsel failed to call two named witnesses. However, he "not only fails to

indicate that the witness[es] w[ere] available to testify, [he] even neglects to mention what the nature of [their] testimony would be." [2] *Commonwealth v. Ashley,* 277 Pa.Super. 287, 292, 419 A.2d 775, 778 (1980); *see also Commonwealth v. Oliver,* 280 Pa.Super. 274, 277, 421 A.2d 719, 721 (1980).

▪ In the case at bar, it is apparent that appellate counsel's bare assertion that trial counsel erred in neglecting to call a number of alibi witnesses, "even though the appellant's defense was alibi[,]" (Appellant's Brief at 11), does not constitute sufficient facts to warrant any relief. *Commonwealth v. Ashley, supra; Commonwealth v. Charleston, supra.*

▪ As for appellant's protestation that trial counsel was ineffective for failing to question the victim as to whether she wore corrective lenses, we find this claim to be equally unpersuasive.

The victim observed her assailant in good lighting for some 25 seconds as he stood but a few feet from her person before the assault. Thus, the victim's opportunity for identification was good; it was neither speculative nor weakened on cross-examination and remained positive. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); *see also Commonwealth v. Tumminello, supra; Commonwealth v. Harrison,* 290 Pa.Super. 389, 434 A.2d 808 (1981). Additionally, while it is true that the victim observed the culprit in the light for a brief period of time, the victim knew the appellant previously and was able to recognize him on sight as her neighbor. Furthermore, during and

---

**2.** Assuming arguendo that such alibi witnesses did exist, there would appear to be a problematic value as to appellant's defense. For example, appellant admitted, on cross-examination, to returning to his apartment on the evening in question "shortly after 3:00 o'clock" a.m., and not going back out that night. (N.T. 230) But, appellant made *no mention* of being in anyone's company during the crucial time. Thus, given the victim's accounting that the assaults occurred between 5:30 a.m. and 6:30 a.m., the purported alibi witnesses could not have exculpated appellant from the acts attributed to him by the victim. *See Commonwealth v. Robinson,* 232 Pa.Super. 328, 334 A.2d 687 (1975).

after the incident, appellant and the victim had spent a significant amount of time conversing; this enabled the prosecutrix to recognize the appellant's voice from her previous contacts with him, and, consequently, identifying him as the guilty party.

Lastly, appellant alleges that trial counsel was ineffective for failing to file a pre-trial motion to dismiss on the basis that the Informations were signed with the rubber-stamped signature of the District Attorney of Delaware County (Frank T. Hazel).

Our reading of the four Criminal Informations reveals that, contrary to appellant's protestation, each was *signed* by a "Robert C. Keller, ADA," Attorney for the Commonwealth. We note that the Judicial Code provides that an Information may be signed by "any assistant district attorney whose authority to act for the district attorney ... is evidenced by a written designation executed by the district attorney ... and filed with the clerk of the courts." 42 Pa.C.S.A. § 8931(i) (1982). In accordance therewith, we observe that appellant does not contest the representation in the Commonwealth's Brief that the designation authorized by Section 8931(i) was complied with, "and is filed with the Clerk of Courts of Delaware County, Miscellaneous Docket Book A–34 at page 344." (Commonwealth's Brief at 15) Nor has appellant argued that the signature of the attorney for the Commonwealth is not that of Robert C. Keller, Assistant District Attorney of Delaware County, who signed the Informations as the District Attorney's designee. *See Commonwealth v. Levenson,* 282 Pa.Super. 406, 422 A.2d 1355 (1980). Moreover, this Court, in dealing with the rubber-stamp issue, has stated most recently that: "It is ... our belief that *only a written indication, by* the district attorney or his *designee,* that the charges contained in an information have been considered and approved satisfy the 'signature' requirement of Pa.R. Crim.P. 225(b)." (Emphasis added) *Commonwealth v. Veneri,* 306 Pa.Super. 396, 403, 452 A.2d 784, 787 (1982). This is what occurred in the case at bar. Therefore, in

accordance with the ruling in *Veneri*, we find no merit to appellant's ineffectiveness argument. In fact, having found no support for any of appellant's contentions upon a review of the record and the case law, we deny appellant's request for relief.[3]

Judgment of sentence affirmed.

---

**3.** Although the appellant does not assail the sufficiency of the evidence on this appeal, we, nevertheless, have reviewed the trial transcript and find ample evidence to support the verdict. (*See* Lower Court Opinion at 8–9); *Johnson Appeal*, 445 Pa. 270, 284 A.2d 780 (1971); *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975); *Commonwealth v. Ebert*, 146 Pa.Super. 362, 22 A.2d 610 (1941).